**State of Vermont v. Richard Ernest Hewey, Jr.**

[471 A.2d 236]

No. 106-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed December 27, 1983

*William E. Kraham,* Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Underwood, J.** Defendant was charged with operating an automobile while his license was suspended, second offense. 23 V.S.A. § 674. He waived trial by jury. After a bench trial the court found him guilty as charged and sentenced him to pay a fine of $150. Defendant timely appealed the adjudication of his guilt.

Before this Court defendant raises two claims of error. First, he challenges the trial court's failure to suppress evidence of his license suspension on the grounds that such evidence was the fruit of an unlawful arrest and detention in violation of the United States Constitution. Second, defendant contends that the State failed to sustain its burden that the evidence of defendant's license suspension came from an in-

dependent source and was not the result of some illegal police conduct.

An officer of the Brattleboro Police Department observed an automobile drive past his parked cruiser during the morning hours of March 28, 1980. Because the automobile bore Vermont registration plates but had a New Hampshire inspection sticker affixed to the windshield, the officer stopped the vehicle.

He asked the driver to produce his registration and license. The defendant, who was the driver, could not produce his registration, but explained to the officer that he had bought the automobile in New Hampshire, transferred his Vermont plates to it, and sent in to the Vermont Motor Vehicle Department for a registration certificate which he had not yet received. Under Vermont law the defendant had fifteen days from the date of the registration certificate in which to have the vehicle inspected in Vermont. 23 V.S.A. § 1222.

Although the officer at that point had no reason to believe that defendant was in violation of any motor vehicle law, he told defendant he would have to run a record check on his driver's license. Defendant remained in his vehicle, and the officer returned to his cruiser where by radio he learned from the dispatcher at the Brattleboro Police Department that the defendant's license was under suspension. The officer issued a citation to the defendant for driving while under suspension. The defendant was then told he was free to leave, and apparently a passenger then drove the car.

The entire process, from the initial stop at 10:57 a.m. until the issuance of the citation at 11:11 a.m., detained the defendant a total of fourteen minutes. Five minutes involved the defendant's explanation of the discrepancy between the Vermont plates and the New Hampshire sticker, and nine minutes involved the officer's time in running the license record check and the writing up of the citation.

Defendant places great reliance upon *Delaware* v. *Prouse,* 440 U.S. 648 (1979), to support his position that since the officer had no probable cause or reasonable suspicion that defendant was an unlicensed motorist, after the explanation of his New Hampshire inspection sticker, he should have let him go on his way. When the officer continued to detain the defend-

ant for the purpose of running a record check on his operator's driving license, defendant argues that under the rule of *Delaware* v. *Prouse* this constituted an impermissible intrusion into defendant's Fourth Amendment rights to privacy. He further reasons that the fruit of the poisonous tree was admitted into evidence when the trial court refused to suppress the evidence that defendant was operating a motor vehicle while his license was suspended.

*Delaware* v. *Prouse* is readily distinguished from the case at bar. In the *Prouse* case the police officer made a random stop of defendant's vehicle, having no probable cause or reasonable suspicion that a violation of the law was being committed. The officer admitted that prior to stopping the car he had not observed either a traffic or equipment violation nor any suspicious activity. The officer had nothing to do and so made a random stop of defendant's car to check for license and registration. While the vehicle was stopped, the officer observed marijuana in plain view inside the car. On those facts the United States Supreme Court suppressed the evidence of the marijuana, and held such a random spot check impermissible under the Fourth Amendment. The officer must have "at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered . . . ." in order to stop an automobile and detain the driver to check his driver's license and the registration of the automobile. *Prouse,* 440 U.S. at 663.

In the case before us the officer was not conducting a random spot check for license and registration. Defendant conceded that the officer had reasonable suspicion when he stopped the car defendant was operating because of the discrepancy between the Vermont plate and the New Hampshire inspection sticker. At the initial stop the officer asked to see defendant's license and registration. There is no challenge to the propriety of this request. Defendant could not produce a registration because he had not yet received it from the Motor Vehicle Department; the record fails to show whether or not defendant produced an operator's license.

In the first five minutes after the stop, the officer was satisfied with defendant's explanation of why he had no certificate of registration and why he had a Vermont plate and a

New Hampshire inspection sticker. The record is silent as to whether or not the officer had probable cause or reasonable suspicion to suspect defendant was an unlicensed operator or was in violation of any other law. The officer did, however, follow up his initial request to see defendant's license by detaining defendant three minutes longer for a record check on his license. When the officer learned defendant was driving while under suspension it took another six minutes to issue the citation.

■ In *Delaware* v. *Prouse, supra,* 440 U.S. at 654, the United States Supreme Court noted that:

the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.

Considering that defendant was already legitimately detained for the inspection sticker irregularity, and that there is no challenge to the officer's request to see defendant's license and registration, the narrow Fourth Amendment issue raised here involves intrusion into defendant's privacy for only the extra few minutes necessary to radio in for a computer check on defendant's license. In this case, we feel that the government interest in detecting unlicensed motor vehicle operators outweighs defendant's interest in proceeding on his way without further delay. We are not persuaded that this constituted a separate and distinct detention or went beyond the scope of the original stop. Absent allegations of bad faith or discriminatory enforcement by the officer, a brief stop for a license check of the sort performed here is permissible under the Fourth Amendment.

■ Here the police officer was justified in making the initial stop and, after hearing defendant's explanation of why he could not produce the certificate of registration for the car he was operating, it was not unreasonable for the officer to detain defendant long enough to check and see if he had a valid license to operate the car. The reasonableness requirement of the Fourth Amendment requires that the investigative detention be temporary and last no longer than is necessary

to effectuate the purpose of the stop. *Florida* v. *Royer*, 460 U.S. 491, 509, 103 S. Ct. 1319, 1325 (1983). See *State* v. *Phillips*, 140 Vt. 210, 215–16, 436 A.2d 746, 749 (1981). The officer's conduct was reasonable under the circumstances.

This case does not involve a situation where the State seeks to justify its detention by what it found—a suspended license. Defendant's attempt to characterize it as such under *People* v. *Dixon*, 85 Mich. App. 271, 271 N.W.2d 196 (1978), is of no avail. In *Dixon,* two men were observed in the early morning running in an area where break-ins had occurred. They were originally detained in a stop held permissible under *Terry* v. *Ohio*, 392 U.S. 1 (1968). *Dixon, supra,* 85 Mich. App. at 276, 271 N.W.2d at 199. In *Dixon,* however, the defendant was detained in a squad car for an additional twenty minutes while an officer went out to survey the surrounding area for criminal activity. During this detention, a message implicating the defendant in a recent crime came over the car radio. Based upon these facts, the Michigan court held that the detention beyond the initial stop was illegal and granted defendant's motion for a new trial.

In the instant case there was no interruption in the original detention. After being stopped, defendant was asked to produce both his license and registration. When the officer was satisfied with defendant's explanation of the registration, he simply continued the original detention for a few more minutes to verify defendant's license. This is distinguishable from the illegal detention in *Dixon*.

▮ We hold that on these facts the intrusion upon defendant's privacy was minimal and permissible; the detention was brief and did not constitute a violation of defendant's Fourth Amendment rights.

Since we find no illegal detention of defendant in this case, there is no tainted evidence to suppress. Thus, we do not address defendant's argument that the State failed to meet its burden of showing that evidence of the license suspension came from an independent source.

*Affirmed.*