# State of Vermont v. Harry E. Ryea

[571 A.2d 674]

No. 85-497

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed January 5, 1990

Steve Dunham, Public Defender, St. Albans, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from his conviction of operating a motor vehicle under the influence of intoxicating liquor (DUI) on a public highway in violation of 23 V.S.A. § 1201(a)(2). We affirm.

On August 5, 1984, a Vermont State Trooper observed defendant operating a motor vehicle on Route 118. The officer recognized defendant and believed that he had seen defendant's name on a list posted at the State Police Barracks of Franklin County residents whose driver's licenses had been suspended (DLS list). The trooper began to follow defendant, but did not activate his blue light or siren. After a short distance, defendant pulled the vehicle into the driveway of his residence. Defendant, his wife and children began to exit the vehicle. The trooper stopped his cruiser near the mouth of the driveway, approached defendant, and asked for his driver's license. Defendant produced a driver's license. The trooper ran a motor vehicle check on the license and requested that defendant sit in the cruiser while he awaited the reply from the dispatcher. The li-

cense check revealed that defendant possessed a valid license.* However, during the time defendant sat in the cruiser, the trooper developed a suspicion that defendant was under the influence of alcohol. The trooper noticed that defendant had watery eyes, slurred speech, and emitted the odor of alcohol when speaking. The trooper decided to process defendant for DUI and read defendant the *Miranda* warnings and his implied consent rights. Defendant then made incriminating statements and gave a breath sample for testing.

Before trial, defendant argued that the trooper had executed an unlawful search and seizure and moved to suppress all evidence. The trial court denied the motion. The case proceeded to trial and defendant was convicted.

## I.

Defendant argues that the trooper's entry onto defendant's residential premises and subsequent detention of defendant after the production of a valid driver's license violate both the Fourth Amendment of the United States Constitution and Chapter I, Article Eleven of the Vermont Constitution. Specifically, defendant contends that, absent a warrant, the trooper could approach defendant in the driveway of his residence only if the trooper had probable cause and exigent circumstances existed. We disagree.

The Fourth Amendment does not confer absolute protection on the curtilage. *State v. Byrne*, 149 Vt. 224, 227, 542 A.2d 276, 278 (1988). A driveway serves as the normal access route for anyone visiting the premises. Though this driveway may fall within the curtilage, it nevertheless constitutes a semi-private area. *State v. Pike*, 143 Vt. 283, 287, 465 A.2d 1348, 1351 (1983); see also *Byrne*, 149 Vt. at 228, 542 A.2d at 278–79 (steps and walkway immediately proximate to home comprise a semi-private area). The record contains no evidence that a fence or gate enclosed the driveway. The Fourth Amendment does not preclude the trooper's approach of defendant in the driveway of

---

* Defendant's driver's license was suspended from March 8, 1984 through June 7, 1984.

his residential premises for the purpose of conducting an investigative stop.

■■ Defendant argues in the alternative that Chapter I, Article Eleven of the Vermont Constitution prohibits the trooper's entry onto the residential premises. Defendant bears the burden "to raise state constitutional issues, where appropriate, . . . and to diligently develop and plausibly maintain them on appeal." *State v. Jewett*, 146 Vt. 221, 229, 500 A.2d 233, 238 (1985). Defendant's brief on this issue consists essentially of an extended quotation of this Court's opinion in *State v. Wood*, 148 Vt. 479, 488–89, 536 A.2d 902, 908 (1987), a case that concerned a party's standing to raise an Article Eleven challenge. Defendant does not offer any explanation why or how Article Eleven affords greater protection from searches and seizures in semiprivate areas than the Fourth Amendment of the Federal Constitution. On these facts, we find no reason to conclude that Article Eleven compels a different result.

## II.

Defendant next argues that the trooper lacked an adequate factual basis to conduct an investigative stop in the driveway of defendant's premises. Even if the trooper could properly detain defendant on his premises, defendant contends that the trooper exceeded the permissible scope of the detention. We disagree.

■ In order to make a valid investigative stop, the police officer must be able to point to specific and articulable facts which, together with the rational inferences taken therefrom, reasonably warrant the intrusion. *State v. Paquette*, 151 Vt. 631, 635, 563 A.2d 632, 635 (1989). In these circumstances, this standard requires the trooper to have had a reasonable suspicion that defendant was driving with a suspended license.

The state police compile a list of drivers with suspended licenses, which is posted at the barracks and regularly updated. The trooper knew defendant by sight and believed he had seen defendant's name on the DLS list. These facts reasonably led to the trooper's suspicion that defendant was operating a vehicle unlawfully and justified the investigative stop effected in the driveway. *State v. Hewey*, 144 Vt. 10, 14–15, 471 A.2d 236, 238–

39 (1983) (officer justified in stopping car with Vermont registration plates and a New Hampshire inspection sticker).

An investigative detention must be "temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* at 14–15, 471 A.2d at 239. Defendant argues that once he produced a valid license, the trooper no longer had any valid reason to restrain him and could not legally detain him in the police cruiser while conducting a license check. In *Hewey*, the driver explained to the officer's satisfaction his failure to produce a Vermont registration certificate. Although at that point the officer had no reason to believe the driver had violated any motor vehicle law, we held the officer could permissibly continue the original detention for a few minutes to verify the driver's license. *Id.* at 15, 471 A.2d at 239. In the instant case, the trooper testified that he decided to run a license check because drivers under suspension often fail to mail in their licenses. Even though he had no reason to suspect that defendant had failed to do so, the trooper's brief continuation of the detention once defendant had produced his license did not render the investigative stop illegal.

## III.

Defendant claims the prosecutor violated his right to a fair trial by making improper statements of personal belief. Defendant contends that in the course of argument, the prosecutor used language that reflected her personal opinion. For example, in response to a challenge to the expertise of a witness, the prosecutor remarked, "I think that the witness has more than established his expertise in the field ... and I do not believe that the Defendant's attorney has established any basis within which to contest his expertise." At the end of closing argument the prosecutor stated, "I'm confident, when you take all of these factors into consideration—the trooper's observations, the Defendant's admissions, and the blood alcohol test—that you will feel confident returning a verdict of guilty." Defense counsel raised timely objections to these remarks and moved for dismissal and mistrial. With respect to the last comment, counsel requested a cautionary instruction.

The trial court denied defendant's motions in part because of the overwhelming evidence of guilt and defendant's failure to establish prejudice. The court reasoned that a cautionary instruction would draw more attention to the innocuous comments and thereby do more harm than good.

█ A prosecutor may not offer to the jury statements of personal opinion of the guilt of the accused. *State v. Trombly*, 148 Vt. 293, 301, 532 A.2d 963, 968 (1987). "Even improper remarks may not result in reversal, however, for the defendant must also demonstrate their prejudicial effect on his right to a fair trial." *Id.* Thus, we examine the challenged statements in the context of the prosecutor's argument and the trial as a whole. *State v. Messier*, 146 Vt. 145, 160, 499 A.2d 32, 43 (1985).

█ Viewed in context, defendant has failed to establish that the prosecutor's suspect comments impaired his right to a fair trial. The statement made at the end of the closing argument did not reflect the prosecutor's own opinion, but rather what she thought the jury could believe. Her other remarks were scattered throughout the trial and involved responses to objections. The prosecutor did not comment on the guilt of defendant, the credibility of witnesses, or the merits of evidence. Although the prosecutor's comments may have been inappropriate, we cannot say they warrant reversal when evaluated in the context of their making.

## IV.

█ Lastly, defendant contends that Chapter I, Articles 10 and 12 of the Vermont Constitution require the submission to the jury of any disputed questions of fact regarding search or seizure. This argument wholly lacks merit. Whether a search and seizure violates the Vermont Constitution is a question of law. Cf. *Pike*, 143 Vt. at 288–89, 465 A.2d at 1351 (legality of search under Fourth Amendment is a question of law). The function of the jury is to act as the finder of facts. Threshold determinations of legal issues are properly committed to the province of the court. The jury had no role to play in the determination of whether a seizure violates the Vermont Constitution. The trial court properly denied defendant's requests for a special verdict regarding the detention of the defendant.

*Affirmed.*