## In re George Fisher

[594 A.2d 889]

No. 89-617

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed April 5, 1991

Motion for Reargument Denied May 10, 1991

*Walter M. Morris, Jr.*, Defender General, *Kenneth A. Schatz*, Acting Defender General, and *Jeffrey Dworkin*, Prisoners' Rights Office, Montpelier, for Petitioner-Appellant.

*Jane Woodruff*, Orleans County State's Attorney, Newport, and *Gary Kessler* and *Pamela Hall Johnson*, Department of State's Attorneys, Montpelier, for Respondent-Appellee.

**Gibson, J.** Petitioner George Fisher appeals from the superior court's denial of his petition for post-conviction relief. We affirm.

### I.

Petitioner began cohabiting with Barbara V. and her four children in 1971. Three of the children are females and victims of sexual assaults by petitioner, who was charged in district court with two counts of sexual assault. Because petitioner was on probation for an arson conviction arising from his having burned down a dwelling occupied by the three girls, conviction on the sexual assault charge also resulted in probation-violation

charges. On June 25, 1984, petitioner entered into a plea agreement with the State whereby one of the two counts would be dismissed, the state's attorney would recommend a sentence of two-to-five years to serve with the probation-violation penalty to be served concurrently, petitioner would be free to argue for a lesser sentence, and petitioner would waive any objection to background information about his sexual activity with the three children.

On the basis of the agreement, petitioner tendered a plea of guilty. The court ordered a presentence investigation (PSI) but withheld entry of judgment, stating, "We'll wait until time of sentencing to enter judgment."

The PSI detailed petitioner's sexual assaults on all three female children. Petitioner readily admitted having repeated sexual contact with each of them, but attempted to excuse his conduct on grounds of alcohol, an alcoholic father, and a promiscuous mother. The police officer's report, which was attached to the PSI, further detailed the sexual assaults. In its conclusion, the PSI recommended that the plea agreement be rejected and urged the court to consider a five-to-fifteen-year sentence.

At the beginning of the sentencing hearing, the judge told the parties that he was troubled by the PSI and inclined to reject the plea agreement. In defense of the agreement, the State informed the court that petitioner would be expected to participate in the Vermont Treatment Program for Sexual Aggressors, commonly called the "Pithers program," that a two-year sentence is the minimum time necessary for qualification for the program, and that the State believed five years was an appropriate maximum sentence. The judge, however, expressed concern that the plea agreement did not provide for a proper degree of punishment and did not adequately protect society. The court noted that, in addition to the sexual assault charges, petitioner had violated his probation conditions. The court stated that it was prepared to reject the agreement, but that petitioner could try to change its mind. After being given the opportunity to speak privately with his attorney, petitioner decided to proceed with the sentencing hearing.

During the hearing, the court called the parties into chambers and indicated that it was willing to go along with a "low minimum" of two years "in light of the fact that [petitioner]

wouldn't necessarily get out in two years unless he was in fact responding appropriately to whatever sexual reorientation program . . . is being administered." The court was still concerned, however, that the maximum sentence was too low, indicating that it believed a twelve-to-fifteen-year maximum would be more appropriate. After the chambers conference ended, the court again allowed petitioner and his attorney to confer privately regarding withdrawal of the plea. Again, petitioner decided not to do so, electing instead to continue with the sentencing hearing.

At the close of the evidence, the court told the parties it was going to reject the plea agreement and that, in its opinion, a two-to-twelve-year sentence was more appropriate. The court then gave petitioner another opportunity to withdraw his plea. After consulting with Barbara V., petitioner declined. The State continued to defend the plea agreement, with its two-year minimum and five-year maximum, adding that with the Pithers program there is "some discretion as to eligibility for release date." The State argued in the same vein against consecutive sentences for the sexual assault charge and the probation violation. After petitioner's attorney argued against long-term incarceration, petitioner acknowledged his understanding that if he were sent to jail he would be expected to participate in "the program." The court then imposed a two-to-twelve-year sentence on the sexual assault charge, to run concurrently with a two-to-five-year penalty for the probation violation.

During the sentencing proceedings, petitioner's attorney incorrectly advised him that he would probably be released at or near his minimum sentence if he were not a disciplinary problem while in prison. She did not advise him that his successful participation in the Pithers program would have a substantial impact on his parole eligibility. Since being sentenced, petitioner has received no disciplinary convictions and is a participant in the program. Although he has been before the Parole Board several times since August 1986, he has been denied parole each time because the Board believed petitioner needed further treatment.

Nearly two years after being sentenced, petitioner filed this post-conviction relief action in superior court. The court denied petitioner's request to vacate the conviction, holding that (1)

the record disclosed a sufficient factual basis for the plea, (2) plaintiff was not prejudiced by his attorney's incorrect advice regarding parole eligibility, and (3) the record did not support petitioner's argument that his plea was coerced and the result of material misunderstandings.

On appeal, petitioner makes five arguments: (1) his plea was coerced and therefore involuntary; (2) the degree of participation by the sentencing judge denied him his constitutional right to an impartial judge; (3) his plea was rendered involuntary because of a mistaken belief regarding parole eligibility; (4) he received ineffective assistance of counsel; and (5) the sentencing court did not establish an adequate factual basis for the plea.

## II.

Petitioner argues initially that the sentencing court coerced a plea of guilty by threatening an enhanced sentence if he proceeded to trial, thereby rendering his plea involuntary under the federal constitution.[1] In support of his argument, petitioner points to the following passage from the chambers discussion:

THE COURT: I want to outline where I come from in terms of the way that I stated initially here.

What I did not say initially is that if he is convicted of this and after a jury trial, he might well fit into those categories of people I give 12 to 20 to serve.

After listening to what the State's Attorney has said here, and knowing that no one is pressing for more than three years, but that a long term handle seems to be the biggest thing that Mr. Haygood wants and something at the moment I think is necessary, too. Two to twelve. It is a long-term handle.

---

[1] Petitioner also cites to Chapter I, Article 10 of the Vermont Constitution and *In re Mandeville*, 144 Vt. 608, 481 A.2d 1048 (1984) (per curiam), which noted that Chapter I, Article 10 guarantees a criminal defendant the right to a trial before an impartial jury. Petitioner does not, however, offer any explanation of how or why the Vermont Constitution provides stricter requirements than the federal constitution. Accordingly, we do not analyze the Vermont Constitution separately. *State v. Ryea*, 153 Vt. 451, 454, 571 A.2d 674, 675 (1990).

██ For legal support, petitioner relies on *North Carolina v. Pearce*, 395 U.S. 711 (1969), and its progeny. *Pearce* provided that when a defendant is given a higher sentence after a second trial, the reasons for the enhanced punishment "must affirmatively appear" in order to assure that there is no "retaliatory motivation on the part of the sentencing judge." *Id.* at 725–26. As subsequently interpreted by the United States Supreme Court, *Pearce* established that a "rebuttable presumption of vindictiveness" arises when a defendant receives a higher sentence upon retrial. *State v. Percy*, 156 Vt. 468, 481, 595 A.2d 248, 255 (1990). *Pearce*'s presumption is aimed at curbing vindictiveness by sentencing judges, not at eliminating all enlarged sentences after retrial. *Texas v. McCullough*, 475 U.S. 134, 138 (1986); see *Alabama v. Smith*, 490 U.S. 794, 799 (1989) (presumption is to be applied only where the circumstances are such that "there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority") (quoting *United States v. Goodwin*, 457 U.S. 368, 373 (1982)); *Percy*, 156 Vt. at 482, 595 A.2d at 256 (*Pearce* presumption does not apply where defendant receives an enhanced sentence upon retrial before a different judge).

██ In the instant case, petitioner pled guilty; thus, there has been no trial, and only one sentence has been imposed. *Pearce* has been held inapplicable in analogous situations. *Smith*, 490 U.S. at 795, 801 ("no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial," even though same judge imposed both sentences, because more relevant sentencing information was available after trial); *Corbitt v. New Jersey*, 439 U.S. 212, 223–24 (1978) ("withholding the possibility of leniency from [defendants who elect to stand trial] cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undisturbed"); *State v. Davis*, 155 Vt. 417, 419, 584 A.2d 1146, 1147–48 (1990) (presumption of vindictiveness held not to arise where defendant rejected a judicially proposed plea-agreement sentence and received a longer sentence from the same judge after conviction). Petitioner has shown no justification to expand *Pearce* to the facts of this case. Accordingly, we hold that the *Pearce* presumption does not apply herein. Petitioner must therefore demonstrate

actual vindictiveness on the part of the sentencing judge in order to establish a violation of his due process rights. *Percy*, 156 Vt. at 482, 595 A.2d at 256 ("'[w]here the [*Pearce*] presumption does not apply, the defendant must affirmatively prove actual vindictiveness.'") (quoting *Wasman v. United States*, 468 U.S. 559, 569 (1984)). As shown below, defendant has failed to meet this standard.

■■ Judicial participation in the plea-bargaining process is not, by itself, sufficient to render a plea involuntary. *Toler v. Wyrick*, 563 F.2d 372, 374 (8th Cir. 1977), *cert. denied*, 435 U.S. 907 (1978); see *Davis*, 155 Vt. at 420–21, 584 A.2d at 1148. Whether the judge's participation in plea-agreement discussions impermissibly impinged on the voluntariness of the plea is to be determined from all the circumstances surrounding the plea. *Toler*, 563 F.2d at 374–75; see *Caudill v. Jago*, 747 F.2d 1046, 1050, 1052 (6th Cir. 1984) (plea held voluntary under all the relevant circumstances).

Petitioner contends that *Longval v. Meachum*, 693 F.2d 236 (1st Cir. 1982), *cert. denied*, 460 U.S. 1098 (1983); *United States v. Stockwell*, 472 F.2d 1186 (9th Cir.), *cert. denied*, 411 U.S. 948 (1973); and *United States v. Tateo*, 214 F. Supp. 560 (S.D.N.Y. 1963), are factually similar to the instant case and require vacation of his conviction. The common thread among these cases is "the offer of a more lenient sentence in a 'plea or else' form." *Commonwealth v. Johnson*, 27 Mass. App. Ct. 746, 751, 543 N.E.2d 22, 25 (citing *Stockwell* and *Longval* as examples), *review denied*, 406 Mass. 1101, 546 N.E.2d 375 (1989). In *Longval*, the trial judge stated to defense counsel, "I strongly suggest that you ask your client to consider a plea, because, if the jury returns a verdict of guilty, I might be disposed to impose a substantial prison sentence." 693 F.2d at 237. After the defendant elected to go to trial and was convicted, the judge imposed a sentence that exceeded the statutory maximum on one charge, and amounted to a total sentence of forty-to-fifty years. A co-defendant was sentenced to three years. The *Longval* court concluded that "the sentencing judge's original remarks were unjudicial urgings to plead, and that the sentences were a retaliatory consequence of the defendant's refusal." *Id.* at 238. Similarly, in *Stockwell* the trial judge offered a sentence of three years if defendant were to plead guilty, the same as a

456

co-defendant had received, but informed defendant that if he exercised his right to trial the sentence would be between five and seven years. The defendant decided to stand trial and, after being convicted, was sentenced to a term of seven years. The case was remanded for resentencing because the record failed to provide any showing that the court sentenced the defendant solely on the facts of his case and not as punishment for his refusal to plead guilty. 472 F.2d at 1187–88. Finally, in *Tateo* the judge interrupted trial to conduct a conference in chambers, telling defense counsel that if defendant were convicted the total sentence would exceed life imprisonment (an illegal sentence) and to "'think it over.'" 214 F. Supp. at 563, 566.

In contrast, the instant case contains no such threatening overtones; instead, it more closely resembles those cases wherein pleas have been held to have been made voluntarily despite remarks made by the court. See, e.g., *United States v. Carter*, 804 F.2d 508, 513–15 (9th Cir. 1986) (upholding sentence because "record fails to show that the court improperly imposed harsher sentences as punishment for appellants' exercise of their right to stand trial"); *Caudill*, 747 F.2d at 1050–52 (holding that plea bargain to a life sentence was not product of judicial coercion even though court had said it would not hesitate to impose death sentence if defendant were convicted at trial and there were no mitigating circumstances). Similarly, in *Toler*, the court rejected the defendant's contention that certain remarks of the judge were threats of a greater sentence affecting the voluntariness of the defendant's plea. Factors influencing the court were (1) its conclusion that the judge was merely explaining the possible sentences, (2) the judge told defendant he did not have to plead guilty unless he wanted to, (3) the defendant had the opportunity to discuss the decision with his family and to withdraw his plea, and (4) the potential sentence was not substantially greater than the plea proposal. 563 F.2d at 374–75.

■■ Here, the superior court concluded that petitioner failed to establish that he had taken the sentencing judge's

comments as a threat.[2] Petitioner argues that the finding is clearly erroneous. Having thoroughly reviewed the record, we cannot agree. The record makes it clear that the sentencing judge was merely explaining the possible alternatives to petitioner, including the possibility of obtaining a different judge. Petitioner was given multiple opportunities to consult with his attorney and his family, and to withdraw the plea. The sentencing judge did not offer the substitute plea agreement in a "plead or else" manner. Instead, the record demonstrates that the judge was concerned with the proper degree of punishment, protecting society from a dangerous individual, and defendant's need for long-term rehabilitation and follow-up, all appropriate principles of sentencing. The judge repeatedly stated that, in light of these concerns, he thought a two-to-twelve year sentence was appropriate. In context, nothing in the record indicates any vindictiveness. Accordingly, we hold that petitioner has failed to demonstrate that he was coerced into pleading guilty or that he was vindictively given an enhanced sentence by the sentencing judge.

### III.

Petitioner next argues that the sentencing judge's participation in the plea-agreement negotiations denied him a neutral and detached magistrate. The sentencing judge became involved when the parties presented their plea bargain to the court, and it indicated an inclination to reject the agreement. "The [sentencing] judge is, of course, not expected merely to rubberstamp the agreement without independent evaluation such as he would undertake in the absence of agreement." Reporter's Notes, V.R.Cr.P. 11; see *State v. Hunt*, 145 Vt. 34, 42, 485 A.2d 109, 113, *cert. denied*, 469 U.S. 844 (1984). V.R.Cr.P. 11(e)(4) requires that when a judge rejects or defers decision on

---

[2] We do not mean to imply that a defendant's subjective impressions are necessarily dispositive. Although subjective impressions are relevant, *Caudill v. Jago*, 747 F.2d 1046, 1050 (6th Cir. 1984), a defendant's apprehension of vindictiveness must be reasonable. *Longval v. Meachum*, 693 F.2d 236, 237 (1st Cir. 1982), *cert. denied*, 460 U.S. 1098 (1983). As previously stated, the voluntariness of a plea is determined by the totality of the circumstances. *Toler v. Wyrick*, 563 F.2d 372, 374–75 (8th Cir. 1977), *cert. denied*, 435 U.S. 907 (1978).

a plea agreement, the judge must "advise the defendant that if he persists in his plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement." The judge must "warn the defendant of the possible consequences of rejection, . . . [and] explicitly give the defendant an opportunity to withdraw his plea." Reporter's Notes, V.R.Cr.P. 11.

██ ██ In the instant case, the sentencing judge explained that, after reading the PSI, he was inclined to reject the agreement, and therefore extended petitioner the opportunity to withdraw his plea. Petitioner declined. This process repeated itself at several stages of the sentencing proceeding, with the court advising petitioner that a potential sentence of two-to-twelve or -fifteen years was likely if the plea were not withdrawn. Explaining the possible consequences of alternative courses of action does not, in and of itself, render a plea involuntary or the judge partial. The judge here did not urge or coerce petitioner into a particular course of action. Instead, the judge repeatedly explained petitioner's options to him, gave him multiple opportunities to withdraw his plea, and even went so far as to say that he might wind up with a different judge if he withdrew his plea and later changed his mind again. In these circumstances, we cannot conclude that petitioner has been denied his right to an impartial judge.

## IV.

Petitioner argues that his plea was based upon material misrepresentations by the court and counsel, thus rendering the plea involuntary. He grounds this argument on asserted mistaken beliefs that he (1) would be sentenced more severely should he exercise his right to a trial, and (2) would be released on parole at the expiration of his minimum sentence so long as he was not a disciplinary problem.[3] As previously discussed, the

---

[3] In his reply brief, petitioner raises for the first time the contention that both the trial judge and defense counsel had an affirmative duty to advise petitioner of the unique parole eligibility obstacles he would face. This argument has, however, been waived. *Maynard v. Travelers Ins. Co.*, 149 Vt. 158, 160, 540 A.2d 1032, 1033 (1987) ("Our law is clear that issues not raised in an

first portion of petitioner's argument fails factually. Thus, only the second portion of his argument need be addressed.

■ For petitioner to prevail, he has the burden of demonstrating that he entered his plea reasonably relying on a material misunderstanding as to his parole eligibility. See *In re Kivela*, 145 Vt. 454, 457, 494 A.2d 126, 128 (1985); see also *In re Clark*, 127 Vt. 555, 557, 255 A.2d 178, 180 (1969) (petitioner in post-conviction relief action has burden of establishing prejudice). In the instant case, the court found that (1) the state's attorney, in the presence of petitioner, told the court that petitioner would be expected to participate in the Pithers program, (2) the state's attorney told the court that petitioner's parole eligibility would not be handled like a "typical burglary" where the prisoner could expect release on parole at his earliest eligibility date, (3) the court said that it was willing to accept the two-year minimum because petitioner "wouldn't necessarily get out in two years unless he was in fact responding appropriately to whatever sexual reorientation program . . . is being administered," and (4) petitioner himself acknowledged at his allocution that he would be expected to participate in "the program." We note that petitioner's allocution occurred after all of the statements regarding parole eligibility were made. Having reviewed the record, it is clear that the court's findings are not clearly erroneous. See *In re Fadden*, 148 Vt. 116, 119, 530 A.2d 560, 562 (1987) (court's findings upheld unless clearly erroneous).

Petitioner places great reliance on *State v. Howard*, 110 N.J. 113, 539 A.2d 1203 (1988). Initially, we note that the relevant portion of *Howard* involved the interpretation of a New Jersey rule of criminal procedure and, contrary to the position advocated by petitioner, did not directly involve federal constitutional principles. *Id.* at 124–26, 539 A.2d at 1208–09. Second, *Howard*, which required a showing of prejudice, *id.* at 123, 539 A.2d at 1208, is factually distinguishable. In *Howard*, the defendant announced at his sentencing hearing that he would not have entered his plea had he known prior to the imposition of

---

appellant's original brief may not be raised for the first time in a reply brief.").

the sentence that he would be subject to unique parole eligibility standards. 110 N.J. at 120, 124, 539 A.2d at 1206, 1209.

In contrast, petitioner never expressed concern to the sentencing court regarding his parole eligibility, despite hearing several times that he would be subject to special parole eligibility criteria. Petitioner did testify at the post-conviction relief hearing that he had relied on his attorney's erroneous advice regarding his parole eligibility and that, if he had been correctly advised, he would have withdrawn his plea. In support, his trial attorney testified that she failed to advise petitioner correctly. At best, however, petitioner has demonstrated a conflict in the evidence. The superior court concluded that petitioner's argument that he was misled by his attorney's erroneous advice was "unconvincing" and, in any event, that "the evidence does not support a conclusion that [petitioner] would have withdrawn his plea and proceeded to trial." The court's findings amply support its conclusions. Accordingly, we hold that petitioner has failed to establish that his plea was entered in reasonable reliance on a material misunderstanding.

## V.

### A.

Petitioner argues that his trial attorney did not provide effective assistance of counsel. The gist of his argument is that his trial attorney incorrectly told him that he could expect to get out on parole at or near his minimum time when, in fact, he would not be released on parole until he successfully completed the Pithers program. He argues on appeal that (1) the superior court incorrectly applied the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 691–96 (1984), when it took into account the circumstances that petitioner faced when he decided to plead guilty, and (2) the court's findings of fact on this issue are clearly erroneous.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the United States Supreme Court applied *Strickland* "to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58. The prejudice prong of *Strickland* was modified in this respect: "[T]he defendant must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. "Although this modification focuses the inquiry on a subjective question, the answer to that question must be reached through an objective analysis." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir.), *cert. denied*, 488 U.S. 843 (1988). Contrary to petitioner's assertion, the circumstances confronting him at the time he decided to plead guilty, including the evidence against him and the likelihood of success at trial, are relevant to the inquiry. *Hill*, 474 U.S. at 59–60; *Hooper*, 845 F.2d at 475.

In *Hill*, the petitioner failed to allege sufficient prejudice where he did not allege that "he would have pleaded not guilty and insisted on going to trial" if he had been correctly advised regarding parole eligibility. 474 U.S. at 60. The instant case is analogous inasmuch as petitioner herein has failed to establish prejudice. The superior court stated that "[t]his court is not able to find that [petitioner] would have withdrawn his plea if he had been told by his attorney that he had to successfully complete the Pithers program before he would be released on parole. The credible evidence does not support this inference." The court later noted that petitioner had no legitimate defense and that he did not want to subject "his family" to further pain and anguish.

Further, immediately after citing *Strickland*, the court stated that "[*n*]o showing of prejudice was shown." (Emphasis added.) Although the court did not cast its findings in terms of "reasonable probability," the court clearly found that petitioner had suffered "no prejudice" and thus had failed to establish a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Petitioner attacks the court's findings as clearly erroneous. Petitioner stresses his trial attorney's testimony at the post-conviction relief hearing that she advised petitioner "he would likely be paroled at or near his minimum," that petitioner considered this to be important, and that he relied on this advice. As noted above, however, the court found that petitioner knew he would have to participate in the Pithers program, with its consequent special parole-eligibility requirements. Petitioner merely establishes a conflict in the evidence. Accordingly,

we cannot agree that the court's findings are clearly erroneous. See *Fadden*, 148 Vt. at 119, 530 A.2d at 562.

### B.

Petitioner also contends that this Court adopted a "Vermont standard" for evaluating ineffective-assistance-of-counsel claims in *In re Bruyette*, 150 Vt. 557, 556 A.2d 568 (1988). *Bruyette* held that an attorney was not reasonably competent where he failed to make a clearly meritorious motion to suppress the only evidence supporting defendant's guilty plea to one of the charges. *Id.* at 561, 556 A.2d at 570. *Bruyette* then went on to hold that the attorney's lack of reasonable competence was not harmless error, applying *Chapman v. California*, 386 U.S. 18 (1967). 150 Vt. at 562, 556 A.2d at 570–71. The prejudice prong of *Strickland* was never explicitly mentioned, although from the context the attorney's malfeasance was obviously prejudicial. See *id.* at 561, 556 A.2d at 570. It is this oversight that petitioner seizes upon.

 Our previous cases adopt both the reasonable competence and prejudice prongs for an ineffective-assistance-of-counsel claim under the Vermont Constitution. See *In re Pernicka*, 147 Vt. 180, 182–84, 513 A.2d 616, 617–19 (1986); *In re Kasper*, 142 Vt. 31, 35, 451 A.2d 1125, 1126 (1982). It is these cases, plus federal case law, on which *Bruyette* relies. Thus, it is clear that *Bruyette* did not adopt a different standard under the Vermont Constitution. Rather, it merely failed to mention explicitly one prong in circumstances where it was obvious. We today reaffirm that under the Vermont Constitution a petitioner must demonstrate prejudice by a preponderance of the evidence in order to establish an ineffective-assistance-of-counsel claim. *Pernicka*, 147 Vt. at 183, 513 A.2d at 618.

### VI.

 Petitioner's final argument is that the sentencing court did not have a sufficient factual basis to accept his plea. V.R.Cr.P. 11(f) provides:

> (f) **Determining Accuracy of Plea.** Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

"Possible sources of information are the defendant himself, the prosecutor, or the presentence report." Reporter's Notes, V.R.Cr.P. 11(f). The court deferred entering judgment on petitioner's plea until the time of sentencing. At that time, the court had before it the PSI, along with the attached investigating officer's affidavit, and had heard petitioner's admissions that he had had repeated sexual contact with all three female children. There was more than ample factual basis for petitioner's plea.

*Affirmed.*