## State of Vermont v. Donna Sutphin

[614 A.2d 792]

No. 90-258

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 22, 1992

Motion for Reargument Denied July 10, 1992

10

*William T. Keefe*, Addison County Deputy State's Attorney, Middlebury, for Plaintiff-Appellee.

*Bonnie Barnes* of *Sessions, Keiner, Dumont, Barnes & Everitt*, Middlebury, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from the trial court's denial of her motion to suppress evidence. She was charged with driving while intoxicated, a violation of 23 V.S.A. § 1201. Defendant contends that the "stop" of her vehicle constituted an illegal seizure under the Fourth Amendment to the United States Constitution. We hold that the Fourth Amendment was not violated, and affirm.

On September 24, 1989, at approximately 1:15 a.m., an Addison County Deputy Sheriff came up behind a vehicle "inappropriately" signaling a right turn in an area where there was no right turn. The vehicle was being operated at varying rates of speed as it headed up a hill toward a curve. After traveling around a left-hand curve, the vehicle pulled off to the side of the highway, outside the white line, and came to a stop. The officer pulled up behind the vehicle and activated his blue lights. He then exited his vehicle and requested that defendant produce her operator's license and registration. As a result of his observations during this interview, the officer processed defendant for DUI.

The trial court found that, under all the circumstances, it was reasonable for the officer to speak to defendant. The is-

sue on appeal is whether the trial court erred in finding that the officer had reasonable grounds for an investigative detention under the circumstances presented. We will not disturb a trial court's findings unless they are unsupported by the evidence or are clearly erroneous. *State v. Zaccaro*, 154 Vt. 83, 86, 574 A.2d 1256, 1258 (1990).

■ The parties disagree over whether the officer's action constituted an investigatory stop within the meaning of the Fourth Amendment, but it is unnecessary to resolve this question because there were grounds for a stop, assuming a stop occurred. A "reasonable and articulable suspicion" of wrongdoing is necessary for a police officer to stop a motor vehicle that is being operated on the highway. *State v. Emilo*, 144 Vt. 477, 481, 479 A.2d 169, 171 (1984). See *Delaware v. Prouse*, 440 U.S. 648, 663 (1979).

■ The question is whether the officer had reasonable grounds to suspect that defendant was engaged in any wrongdoing at the time of the encounter. The level of suspicion required under the Fourth Amendment is considerably less than proof of wrongdoing by a preponderance of the evidence, *United States v. Sokolow*, 490 U.S. 1, 7 (1989), but it must be more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry v. Ohio*, 392 U.S. 1, 27 (1968). An adequate basis for judicial review of the officer's action exists when the officer gives a reasonably specific statement of the circumstances underlying his action together with his reaction to the situation with which he was confronted. *State v. Carnevale*, 598 A.2d 746, 748 (Me. 1991) (citing 3 W. LaFave, Search and Seizure § 9.3(a), at 428 (2d ed. 1987)).

■ The officer gave such a statement. He observed a vehicle in the early morning hours traveling at varying rates of speed, signaling to make a right turn at a location where no right turn existed.* The signaling, which he described as inappropriate,

---

* Defendant argues that the right turn signal was activated to indicate her intention to pull over to let a faster moving car pass. 23 V.S.A. § 1064(e) requires directional signals to be used "to indicate an intention to turn, change lanes, or start from a parked position," and prohibits their use as a

continued for several hundred feet around a left curve after which the vehicle pulled off the highway and came to a stop. These circumstances were sufficient justification for the officer to conclude that criminal activity might be afoot and justified the stop under *Terry.*

*Affirmed.*

**Dooley, J.,** concurring. I concur in the result, but on different grounds. The critical factor for me is that there was no stop by the officer in this case. It is undisputed that defendant pulled off the road and came to a complete stop before the officer pulled up behind her. Thus, we must distinguish this case from those like *State v. Emilo,* 144 Vt. 477, 481, 479 A.2d 169, 171 (1984), where a police officer used flashing blue lights in order to stop a vehicle. I think it is clear that the degree of restraint on defendant was significantly less than if there had been a stop. See, e.g., *People v. Murray,* 137 Ill. 2d 382, 390, 560 N.E.2d 309, 313 (1990).

Ordinarily, where there is no stop there is no seizure, and the constitutional protection on which defendant relies does not apply. Three facts present here might change that conclusion: (1) the officer approached defendant's car "armed and in uniform"; (2) the officer asked for defendant's license and registration; and (3) when he stopped, the officer activated his flashing blue lights. It is clear that neither of the first two facts amount to a seizure. The United States Supreme Court has held that a uniformed officer approaching a citizen, asking questions of the citizen and asking for identification, is not a seizure, a holding most recently reaffirmed in *Florida v. Bostick,* — U.S. —, —, 111 S. Ct. 2382, 2386 (1991), in which the Court concluded that the rule was no different on a bus even though the individual involved did not feel free to leave the bus. As a result, courts have uniformly held that "the mere approaching and questioning of a person seated in a parked vehicle does not constitute a seizure." *People v. Murray,* 137 Ill. 2d at 391–92, 560 N.E.2d at 313; see generally 3 W. LaFave, Search and Seizure § 9.2(h), at

courtesy or "do pass" signal to operators of other vehicles approaching from the rear.

409 (2d ed. 1987). Further, they have held that requesting a license and registration does not constitute a seizure unless the officer does not return these documents. See generally 3 W. LaFave, Search and Seizure § 9.2(h), at 414 n.252.

The only ground to find a seizure in this case is the use of flashing blue lights. In looking at this issue, I accept that the use of these lights is normally viewed as a police "order" to stop. See *Moyer v. Dunn County*, 691 F. Supp. 164, 169–70 (W.D. Wis. 1988). One commentator has noted, "Certainly it seems an officer seeking to avoid a seizure should not activate the lights of the squad car." Butterfoss, *Bright Line Seizures: The Need for Clarity in Determining When Fourth Amendment Activity Begins*, 79 J. Crim. L. & Criminology 437, 456 n.109 (1988). Despite these generalizations, with which I agree, I do not believe the use of the lights in this case resulted in a seizure.

First, our law distinguishes between the use of flashing lights to stop a motorist and the use for other purposes. All of the statutes imposing requirements on a motorist when approached by a law enforcement vehicle using flashing blue lights involve use of the lights to stop the vehicle. See 23 V.S.A. § 1012 (operator "shall promptly and carefully stop when signalled to stop by an enforcement officer wearing insignia which identifies the officer"); § 1013 (person may not "knowingly fail or refuse to comply with any lawful order" of enforcement officer); § 1133 (an operator must "bring his vehicle to a stop when signalled to do so by an enforcement officer . . . operating a law enforcement vehicle . . . displaying a flashing blue . . . signal lamp"). The presence of a stopped law enforcement vehicle with a flashing light more often gives a message that there is a road hazard, and cars should proceed with caution. Indeed, the flashing lights may have been used for this purpose here since the shoulder was narrow.

Second, the primary message that the flashing lights give is the presence of a law enforcement vehicle because only such a vehicle can use this color of flashing light. 23 V.S.A. § 1252(a)(1). In a major sense, the use of the flashing light is similar to the uniform; it identifies the presence of a law enforcement officer. If the visible symbol of law enforcement does not bring about a seizure in one instance, it should not necessarily do so in the

other instance. While some persons might find the flashing lights to be more intimidating than the uniform, the difference is one of degree, not kind. I see no bright line between these symbols.

Most significant for me is the third reason—we want law enforcement officials to use a visible signal of their presence in a case like this. This incident occurred late at night on a remote and isolated stretch of road. If we prohibit the use of the lights in such circumstances, we are requiring that the officer approach the vehicle with no way of showing that the officer presents no threat to the well-being of the occupant of the vehicle. Even if we view the officer solely as a criminal investigator, it is highly desirable, for both the vehicle occupant and the officer, that the occupant know that the person approaching is an officer. In the context of a DUI roadblock, we have required "a visible display of legitimate police authority" to meet Fourth Amendment requirements. *State v. Martin*, 145 Vt. 562, 571, 496 A.2d 442, 448 (1985). The need for a visible display is much greater in this case. See *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 452 (1990) (checkpoint stops involve less generation of concern or fear in motorists than stops by roving patrols).

We must also deal with the likely scenario that the officer will be providing assistance to a disabled vehicle and must warn other motorists of a potentially hazardous condition. If the use of flashing blue lights constitutes a seizure, it is because they represent a "show of authority." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Normally a seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). As the Supreme Court has recently explained, however, the *Mendenhall* test is incomplete in show-of-authority cases. See *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 1551 (1991). In addition to concluding that a reasonable person would not have believed she was free to leave, we must also conclude that there was actually a submission to the assertion of authority. See *id.* I find it difficult to so conclude in this case. Because the officer may have employed the flashing lights for a number of reasons, it is not clear that a reasonable person would interpret them as

meaning she is required to remain stopped or that defendant so interpreted them in this case. In this doubtful circumstance, I would not interpret the use of the lights as a command to defendant to remain stopped. I note that in *Hodari D.* the Court's interpretation of the Fourth Amendment was influenced by the policy objective of avoiding dangerous street pursuit of criminal suspects. *Id.* Similarly, in this case, my view of the concept of a seizure is influenced by the desirability of having the officer be identified in some meaningful way.

**Johnson, J.,** dissenting. Motorists and traffic law enforcement officials alike will be astonished to learn that in Vermont (1) a motor vehicle operator not only is not required to signal an intent to pull off to the side of the road, but is committing an offense by doing so, and (2) if a motor vehicle operator has pulled off to the side of the road and is then approached by a law enforcement vehicle that pulls up and stops behind it with its blue lights flashing, the operator is under no compulsion to stay and may, even as the police officer steps from the cruiser, simply pull back onto the road and freely drive away. These, however, are the teachings of the plurality and concurring opinions, respectively. Because I believe that those propositions are contrary to law and fly in the face of common sense, I respectfully dissent.

On September 24, 1989, a deputy sheriff for the Addison County Sheriff's Department was travelling south on Hallock Road in Waltham, Vermont at about 1:15 a.m. He was on duty at the time and in a marked cruiser. He was armed, and in uniform, although his companion from the Department of Highway Safety was not. Hallock Road is a paved, two-lane road in a rural area. It is narrow and winding, with narrow shoulders. As the officer travelled south toward New Haven, he observed defendant's car in operation. He was travelling faster than defendant's car, but was not pursuing it. As he approached, he observed defendant's right turn signal blinking. There were no right turns in the area. He also observed that the vehicle's speed varied as it travelled through a curve. Immediately after these observations, the officer saw defendant pull off the road to the right and come to a complete stop. The officer, because he was "curious," pulled in behind defendant's car and activated

his blue lights. He got out of the car, along with his companion, approached defendant, and asked for her license and registration. She was not able to produce the documents at that point, although she later produced them at the police station. As a result of the officer's observations after he asked for defendant's documents, he processed her for DUI. At the point defendant pulled off the road, the officer had not observed any violation of law.

On these facts, the plurality holds that the officer had reasonable and articulable suspicion to believe that defendant was involved in criminal activity. The concurrence, on the other hand, concludes that there was no seizure of defendant under the Fourth Amendment, and the officer was free to question defendant without any suspicion that she had committed a crime.

## I.

The first question is whether a seizure occurred, because reasonable and articulable suspicion is not required for police encounters that do not amount to a seizure. *Florida v. Bostick*, — U.S. —, —, 111 S. Ct. 2382, 2386 (1991); *State v. Paquette*, 151 Vt. 631, 634, 563 A.2d 632, 635 (1989). The concurrence emphasizes that because defendant stopped herself, and the police walked up to her, she was not seized within the meaning of the Fourth Amendment.

Police conduct amounting to seizure of a person may occur in a variety of places—on the street, as in *Brown v. Texas*, 443 U.S. 47, 48 (1979), and *Terry v. Ohio*, 392 U.S. 1, 5 (1968), in cars, as in *Delaware v. Prouse*, 440 U.S. 648, 650 (1979), and *State v. Emilo*, 144 Vt. 477, 479, 479 A.2d 169, 170 (1984), or when stopped in one's own driveway, as in *State v. Ryea*, 153 Vt. 451, 452, 571 A.2d 674, 674 (1990). Thus, whether a person is seized within the meaning of the Fourth Amendment does not depend on whether it was police restraint that caused him to stop moving, but on whether the encounter with police restrained his liberty, even if briefly. *Florida v. Bostick*, — U.S. at —, 111 S. Ct. at 2387; see *Brown v. Texas*, 443 U.S. at 48, 50 (person standing in alley was seized when officers asked him for identification).

The rule for determining if a particular encounter with the police constitutes a seizure under the Fourth Amendment re-

quires this Court to consider whether, in light of all of the circumstances surrounding the incident, "the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, — U.S. at —, 111 S. Ct. at 2389.

In *Bostick*, two officers of a Florida county sheriff's office boarded a bus to question the passengers. *Id.* at —, 111 S. Ct. at 2384–85. Although the purpose of the questioning was to intercept drug trafficking, they had no reasonable and articulable suspicion to question Bostick, who was seated on the bus. *Id.* The officers requested Bostick's consent to search his luggage for drugs and advised him of his right to refuse. *Id.* at —, 111 S. Ct. at 2385. Bostick gave his consent to the search, the officers found cocaine in his luggage, and he was arrested. *Id.* The Court concluded that because the bus was scheduled to depart shortly after the officers boarded it, and Bostick had been advised of his right to refuse consent and had expressly agreed to the search, he was, under all the circumstances, engaged in a voluntary encounter with the police that he chose not to terminate. *Id.* at —, 111 S. Ct. at 2386–87.

The *Bostick* Court reversed the bright-line rule adopted by the Florida Supreme Court that such police questioning on buses was, per se, a seizure. *Id.* at —, 111 S. Ct. at 2389. In doing so, however, the Court reaffirmed the objective "free to leave" test outlined in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), and held that it applies wherever an encounter with the police occurs. *Bostick*, — U.S. at —, 111 S. Ct. at 2386–89. Thus, when police walk up to a person to ask questions, the inquiry under the Fourth Amendment is the same whether the person is sitting on a bus or in a car.

A few months before the *Bostick* decision, the Court decided *California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547 (1991). *Bostick* cites *Hodari D.* as support for the objective "free to leave" test, *Bostick*, — U.S. at —, 111 S. Ct. at 2387, but the decision in *Hodari D.* relies on a different analysis and posits a different rule. Relying on the common law of arrest, the Court held that a suspect who was chased by a police officer was not seized until either physical force was applied to stop him, or he submitted to the officer's authority. *Hodari D.*, 499 U.S. at 625–29, 111 S. Ct. at 1550–57. Thus, the drugs that the suspect dis-

carded from his person while running were not suppressed because he had not, at that point, submitted to the officer's authority or been subdued by him. *Id.* at 629, 111 S. Ct. at 1552.

In my view, it is impossible to reconcile the two rules that emerge from *Bostick* and *Hodari D.* Certainly, being chased by police officers conveys the message that compliance with police requests is required, and that, therefore, the encounter is not voluntary. *Bostick,* — U.S. at —, 111 S. Ct. at 2387. But whether one applies the *Bostick* "free to leave" test, which is more appropriate to the facts of the case before us, or the *Hodari D.* "submission to authority" rule, defendant here was seized when the police cruiser pulled in behind her, activated the overhead lights, approached the car, armed and in uniform, and asked to see her driver's license and registration. At that point, defendant reasonably concluded she was not free to leave or decline the officer's requests, and submitted to authority by not leaving the scene.

Lesser displays of authority have been held to constitute seizures under the Fourth Amendment by this Court and others. *State v. Emilo*, 144 Vt. at 481, 479 A.2d at 171 (activation of blue lights to stop car requires reasonable and articulable suspicion); *Wibben v. North Dakota State Highway Commissioner*, 413 N.W.2d 329, 330, 331 (N.D. 1987) (approaching parked car and tapping on window with flashlight was a seizure under the Fourth Amendment); *State v. Walp*, 65 Or. App. 781, 783–84, 672 P.2d 374, 375 (1983) (use of overhead lights behind voluntarily stopped car was sufficient show of authority to restrain liberty of defendant within meaning of state statute where the test for a stop is identical to the test under the Fourth Amendment); *State v. Stroud*, 30 Wash. App. 392, 396, 634 P.2d 316, 318 (1981) (Fourth Amendment seizure occurred when officers pulled up behind parked vehicle and activated lights).

It is true, as the concurrence argues, that flashing blue lights are used by the police to indicate road hazards, convey other public safety messages, or even to identify themselves as law enforcement officers. In such circumstances, flashing blue lights do not always constitute a show of authority, but these distinctions are not applicable here. In this case, the conclusion is inescapable that the lights were used for no other purpose than to signal defendant that she was not free to leave because

the police officer wanted to question her. Defendant was pulled off to the side of a rural road at 1:00 a.m. in the morning. There was no other traffic on the road. The lights were directed at defendant and no one else. After the lights were flashed, the police officer approached defendant. He did not ask her if she was all right or needed assistance. He asked for her license and registration. At that point, no reasonable person would have felt free to terminate the encounter and drive away.

Moreover, defendant's attention to the police officer's requests was implicitly, if not explicitly, compelled by Vermont statutes and the Vermont Driver's License Manual, published by the Vermont Commissioner of Motor Vehicles, which require drivers to respond to the requests of police officers and remain at the scene after an officer displays the overhead lights. See, e.g., 23 V.S.A. § 1012 (Obedience to enforcement officers), § 1013 (Authority of enforcement officers), and § 1133 (Attempting to elude a police officer); Vermont Driver's Manual at 13, 33 (36th ed. 1991). To compel defendant to comply with Vermont law, and then deprive her of her Fourth Amendment rights for doing so, is an unjust result.

*Florida v. Bostick* commands that we consider the totality of circumstances in judging whether a seizure occurred, not whether each separate element of police conduct, by itself, constituted a seizure. In this case, the blue lights, directed at defendant and coupled with the request to produce her license and registration, were actions that were intended to and did assert the police officer's coercive authority. Under these circumstances, defendant was seized.

## II.

The next inquiry focuses on whether the officer's actions were reasonable and therefore justifiable under the Fourth Amendment. Ordinarily, the reasonableness of a seizure under the Fourth Amendment requires courts to balance "the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). To avoid giving police officers unfettered discretion to intrude arbitrarily on an individual's reasonable expectation of privacy, see *Delaware v. Prouse*, 440 U.S. at 654, the balancing inquiry requires that an

officer have reasonable and articulable suspicion that an individual is engaged in criminal activity, or is violating a motor vehicle law, before the officer may conduct a brief, investigatory stop. *Brown v. Texas*, 443 U.S. at 50–51; *State v. Emilo*, 144 Vt. at 481, 479 A.2d at 171; *State v. Hewey*, 144 Vt. 10, 13, 471 A.2d 236, 238 (1983).

Taking the testimony of the officer in the instant case as true, see *State v. Weiss*, 155 Vt. 558, 562, 587 A.2d 73, 75 (1990) (legality of a search warrant turns on whether, taking the information in the affidavits as true, there was substantial evidence supporting issuance), the officer presented no facts from which one could objectively conclude that defendant was engaged in criminal activity or was violating a motor vehicle law. The officer testified that he noticed a car ahead of him with its right turn signal blinking and that the car, after slowing down through a curve, pulled off the road to the right. The officer had not observed any violation of law at the point he pulled off the road behind defendant's car. There was no testimony to suggest that the officer even suspected a violation of law. The officer stopped because he was curious. He gave no reason for his curiosity other than that a car was pulling off to the side of a rural road at night.

The plurality opinion concludes that, because defendant used her right turn signal before she pulled off the road, she violated a rule of the road, 23 V.S.A. § 1064(e). Section 1064 (Signals required), provides

> The signals provided for in section 1065 of this title shall be used to indicate an intention to turn, *change lanes*, or start from a parked position and may not be flashed on one side only on a parked or disabled vehicle, or flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear.

(Emphasis added.) There is no evidence in the record on which to base the conclusion that defendant was signalling the officer as a courtesy to pass. Her actions could just as easily be interpreted as changing lanes, which requires a signal. Even if her maneuver is not considered a change of "lanes" because she pulled onto the shoulder, her actions were consistent with subsection (a) of § 1064, which requires motorists to signal before changing direction.

I cannot believe that § 1064, whatever its ambiguities, was intended to make the operation of a signal in these circumstances an offense. I doubt there is a police officer or traffic enforcement official anywhere in the country who thinks it is anything other than hazardous to fail to signal an intent to pull off to the side of the road.

The plain fact is that the police seized defendant without reasonable and articulable suspicion that she had committed a crime or violated a rule of the road. The seizure was therefore unreasonable, and the evidence obtained as a result should have been suppressed. See *State v. Emilo*, 144 Vt. at 484, 479 A.2d at 173. I therefore dissent. I am authorized to say that Justice Morse joins me in this dissent.