1997 ME 169

**Albenie LAFERRIERE**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued March 4, 1997.

Decided July 23, 1997.

Jefferson T. Ashby (orally), Hardings Law Offices, Presque Isle, for petitioner.

Andrew Ketterer, Attorney General, Charles K. Leadbetter, Asst. Atty. Gen. (orally), William R. Stokes, Asst. Atty. Gen., Augusta, for State.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Albenie Laferriere appeals from the judgment entered in the Superior Court (Aroostook County, *Marsano, J.*) denying his petition for post-conviction review of his murder conviction following a guilty plea. On appeal, he contends that the court erred by rejecting his contention that he was denied the effective assistance of counsel. We disagree and affirm the judgment.

## I.

[¶ 2] On December 23, 1992, Albenie Laferriere killed his wife Audrey by shooting her three times, twice in the chest and once in the back of the head, in the bedroom of Laferriere's apartment in Van Buren. After the shooting, Laferriere called attorney Mark Freme, told him what had happened, and asked him to come to Laferriere's apartment. Laferriere also called Norman Burby, a man with whom Audrey had recently been staying, and told him of the shooting. Both Freme and Burby telephoned police and informed them of the shooting. Freme rode to Laferriere's apartment with a State Police trooper, and the two arrived to find Van Buren police already on the scene. Laferriere, who is confined to a wheelchair, was still in his apartment when police arrived. He said that he had shot Audrey and turned the weapon over to police.

[¶ 3] Laferriere was indicted on one count of murder in violation of 17–A M.R.S.A. § 201 (1983). In February 1993 he entered a plea of guilty to the charge and was sentenced to 55 years in prison. He filed a petition for post-conviction review in 1995, and the court denied the petition. We granted a certificate of probable cause pursuant to M.R.Crim. P. 76.

## II.

[¶ 4] Laferriere claims that he was denied the effective assistance of counsel in the presentation of his guilty plea in violation of the Sixth Amendment to the United States Constitution. He claims such ineffectiveness from the commencement of the police investigation of the shooting until the conclusion of the plea proceeding. Specifically, Laferriere alleges the following examples of his attorney's ineffectiveness: (1) after Laferriere called Freme to tell him of the shooting, Freme called State Police and informed them that Laferriere had shot and killed his wife; (2) after police arrived at Laferriere's apartment, Freme made no effort to limit their access to Laferriere. When Laferriere suffered chest pains and was taken to the hospital, police interrogated Laferriere while he was in his hospital bed without objection from Freme; (3) Freme agreed to a 55 year joint sentence recommendation and advised Laferriere that he would serve his sentence in a state nursing home rather than prison; (4) Freme failed to explain the nature of the charges against him. As a result he did not understand the charge to which he was pleading guilty; and (5) Freme had a conflict of interest in his representation because of the possibility that Freme would have been called as a witness for the State if Laferriere had proceeded to trial.

## III.

### Demonstrating Prejudice

[¶ 5] The right of an accused to be represented by counsel "is a fundamental component of our criminal justice system" guaranteed by the Sixth Amendment of the United States Constitution. *U.S. v. Cronic,* 466 U.S. 648, 653, 104 S.Ct. 2039, 2043, 80 L.Ed.2d 657 (1984). "The right to counsel plays a crucial role in the adversarial system

embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (quoting *Adams v. U.S. ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942)). Because of the fundamental role that defense counsel play in ensuring the fairness of the criminal justice system, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). See *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975) ("The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."). The absence of effective counsel undermines faith in the proper functioning of the adversarial process. "Unless the accused receives the effective assistance of counsel, 'a serious risk of injustice infects the trial itself.'" *Cronic,* 466 U.S. at 656, 104 S.Ct. at 2045 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 343, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980)).

■ [¶ 6] Because Laferriere bore the burden of proof at the post-conviction hearing, we will not disturb the court's determination that he failed to satisfy his burden unless "the evidence compelled the court to find to the contrary." *State v. Jordan,* 599 A.2d 74, 76 (Me.1991). On post-conviction review, we have consistently applied a two-part test to the conduct of trial counsel to determine if a new trial is warranted.

The inquiry is: '(1) whether counsel's performance falls measurably below the performance that might be expected of an ordinary, fallible attorney; and, if so, (2) whether counsel's substandard performance likely deprived the defendant of an otherwise available substantial ground of defense.'

*Lagassee v. State,* 655 A.2d 328, 329 (Me. 1995) (quoting *State v. Jurek,* 594 A.2d 553, 555 (Me.1991)). We have said that our two part test is "virtually identical" to the test formulated by the Supreme Court of the United States in *Strickland v. Washington.*[1] *Kimball v. State,* 490 A.2d 653, 656 (Me. 1985).

■ [¶ 7] This case marks the first occasion we have had to apply the *Strickland* test to an ineffective assistance of counsel claim arising out of a plea proceeding. The Supreme Court has already done so. In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), petitioner Hill challenged his guilty plea as involuntary because of the ineffective assistance of counsel. Hill claimed that his lawyer advised him that if he pleaded guilty he would be eligible for parole after serving only a third of his sentence, when in actuality he would not have been eligible until he had served half of his sentence. 474 U.S. at 55, 106 S.Ct. at 368–69 The Court held that "the same two-part standard" of *Strickland* is "applicable to ineffective assistance claims arising out of the plea process." 474 U.S. at 57, 106 S.Ct. at 370. The Court further held that while the first prong of the *Strickland* test remains the same in a plea proceeding,

[t]he second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective perfor-

---

1. The Supreme Court held in *Strickland* that:

 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defen-

 dant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 466 U.S. at 687, 104 S.Ct. at 2064.

mance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

474 U.S. at 59, 106 S.Ct. at 370.

The Court rejected Hill's claim because he failed to satisfy the "prejudice" requirement.

Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty.

474 U.S. at 60, 106 S.Ct. at 371.

■ [¶ 8] Retaining the "prejudice" requirement for a defendant who seeks to challenge the validity of a guilty plea through post-conviction proceedings maintains the burden on the defendant to show that the alleged error by counsel impugns the validity of the conviction.[2] *Hill,* 474 U.S. at 58, 106 S.Ct. at 370. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* at 56, 106 S.Ct. at 369 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). Setting aside an otherwise valid guilty plea because of an error by counsel that did not affect the knowing and voluntary nature of the defendant's plea would be a windfall to the defendant: "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the

error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. Laferriere cannot prevail unless he demonstrates that he would not have pleaded guilty if his counsel had not made the errors he is alleged to have made. "'Prejudice' is a reasonable probability that the defendant would have insisted on going to trial had he not received the ineffective assistance, and a 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.'" *Ostrander v. Green,* 46 F.3d 347, 355 (4th Cir.1995) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068), overruled on other grounds by *O'Dell v. Netherland,* 95 F.3d 1214 (4th Cir.1996). The reliability of the plea proceeding is not impugned if the decision to plead guilty was the knowing and voluntary choice of a guilty person.

■ [¶ 9] Laferriere faces a difficult task in convincing us that his plea was not the voluntary and knowing choice of a guilty person, given the meticulous questioning by the court to ensure that Laferriere understood the consequences of his plea. *Huff v. State,* 289 Ark. 404, 711 S.W.2d 801, 803 (1986) ("A defendant whose conviction is based on a plea of guilty ordinarily will have difficulty in proving prejudice since his plea rests on the admission in court that he did the act with which he is charged."); *Praylow v. Martin,* 761 F.2d 179, 183 (4th Cir.1985), cert. denied, 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 466 ("The transcript of the plea proceeding reflects that Praylow admitted his guilt to the trial judge and further stated he was pleading freely and voluntarily.... The record supports the findings ... that Praylow pleaded guilty ... knowingly and voluntarily."). The record in this case reveals the care exercised by the court at the Rule 11 hearing to ensure that Laferriere's plea was voluntary. Indeed, the court direct-

---

**2.** *See U.S. v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979) ("Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas

are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.") (quoting *U.S. v. Smith,* 440 F.2d 521, 528–29 (7th Cir.1971)).

ed several questions to Laferriere about the voluntariness of his plea. *Littlefield v. State,* 429 A.2d 1006, 1008 (Me.1981). "A plea is valid if it is made voluntarily with knowledge of the elements of the crime, the penalty that might be imposed and the constitutional rights relinquished by foregoing trial." *State v. Comer,* 584 A.2d 638, 640 (Me.1990).

■ [¶ 10] Despite the difficulties of proof posed by the prejudice requirement, Laferriere did not testify at the hearing on his petition for post-conviction review, and thus he did not explain why he chose to plead guilty. Instead, he presented the testimony of a Maine State Police detective who went to the scene of the crime and an attorney who focused on the deficiencies in the performance of Laferriere's attorney over the course of the murder investigation. The State presented only the testimony of Freme. None of this testimony offered any insight into why Laferriere decided to plead guilty, or how a different performance by counsel would have changed that decision. Laferriere has thus failed to demonstrate that he was prejudiced by the alleged errors of counsel.

### Presumption of Prejudice

■ [¶ 11] Aware of these deficiencies in the record, Laferriere contends that he can satisfy the prejudice requirement of *Strickland* because he is entitled to a presumption of prejudice arising out of his attorney's ineffectiveness. The Supreme Court in *U.S. v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984), decided the same day as *Strickland v. Washington,* stated that generally "the burden rests on

the accused to demonstrate a constitutional violation" arising out of errors committed by counsel. The Court stated, however, that in rare instances prejudice might be presumed "without inquiry into counsel's actual performance at trial."[3] 466 U.S. at 662, 104 S.Ct. at 2048. "The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n. 25, 104 S.Ct. at 2047 n. 25. *See also Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (court denied defendant the right to cross examine witness); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)(court appointed one out of state attorney to represent six defendants on the first day of trial in a highly publicized capital offense). If "the defendant was constructively denied the assistance of counsel, then the conviction must be overturned because prejudice is presumed." *Woodard v. Collins,* 898 F.2d 1027, 1028 (5th Cir.1990). *See Geders v. U.S.,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (bar on attorney consultation with client during overnight recess); *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (bar on summation); *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (defendant required to be first defense witness); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (per curiam) (denial of counsel at preliminary hearing); *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (denial of counsel at arraignment); *Ferguson v. Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (bar on direct examination of defendant).[4] In addition to actions by the court

3. A defendant entitled to the "presumption" of prejudice is relieved of the evidentiary burden of demonstrating a reasonable probability that but for the errors of counsel the outcome of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985). The presumption attaches to the limited category of attorney errors that result in "a breakdown in the adversarial process that would justify a presumption that [the defen-

dant's] conviction was insufficiently reliable to satisfy the Constitution." *U.S. v. Cronic,* 466 U.S. 648, 662, 104 S.Ct. 2039, 2049, 80 L.Ed.2d 657 (1984). In those limited situations where the presumption is established, the defendant has satisfied the "prejudice" prong of the *Strickland* test.

4. We have had occasion to apply *Strickland* and *Cronic* to a claim of presumptive prejudice arising out of a court order. In *State v. Gilman,* we concluded that the court's order denying the

that pose impediments to the effective assistance of counsel, counsel can also deprive the defendant of effective assistance by representing the defendant while having a conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980).

■ [¶ 12] At the core of the prejudice analysis, whether the issue is demonstrated or presumptive prejudice, is a concern for the reliability of the trial or plea proceeding "as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064. A just result in a criminal trial can be the conviction of a guilty party. The just result of a plea proceeding is the knowing and voluntary entry of a guilty plea by a guilty party. In the case of a trial the determination of guilt can be reached by the factfinder despite the protestation of innocence by the defendant. The vagaries of the trial process create more possibilities for the interplay between the deficient performance of counsel and a result that is "insufficiently reliable to satisfy the Constitution." *Cronic*, 466 U.S. at 662, 104 S.Ct. at 2049. In the case of a guilty plea the determination of guilt is almost always based on an acknowledgement of guilt by the defendant in the course of a Rule 11 inquiry. Moreover, that proceeding is controlled by the careful questioning by the court that explores the nature of the evidence the State would present at a trial, counsel's role in advising the defendant, the defendant's understanding of the evidence, the charges related thereto, the consequences of a plea, and the voluntary and knowing nature of the plea. Unlike at a trial, the defendant who enters a plea of guilty in a Rule 11 proceeding is cooperating in the creation of a record intended to instill confidence that the outcome is a reliable reflection of guilt. These characteristics of that proceeding make it particularly difficult to demonstrate prejudice from the errors of counsel and to argue that the errors of counsel are of such magnitude that the plea process is presumptively unreliable "and no amount of showing of want of prejudice would cure it." *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111 (quoting *Brookhart v. Janis*, 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966)).

■ [¶ 13] Some courts have applied the presumption of prejudice analysis to challenges to guilty pleas in a post-conviction proceeding.[5] Other courts have applied the presumption of prejudice analysis to the defendant's challenge to a guilty plea but determined that the defendant was not entitled to

---

defendant the opportunity to present a closing argument was *per se* prejudicial to the defendant. 489 A.2d 1100, 1103 (Me.1985). We based our decision on the criminal defendant's "right to present closing argument, either himself or through counsel, on the evidence and the applicable law, regardless of how clear and conclusive the evidence may appear to be." *Id.* at 1102 (citing *Herring v. New York*, 422 U.S. 853, 858–59, 95 S.Ct. 2550, 2553–54, 45 L.Ed.2d 593 (1975)). Although the court has discretion to control the scope of closing argument, we stated that the court "has no discretion as to whether to allow summation by the defense." *Id.* at 1103. Because of the court's denial of the defendant's right to summation, we held that the defendant's conviction had to be vacated "without regard to whether the defendant was prejudiced." *Id.* (quoting *U.S. v. Spears*, 671 F.2d 991, 992 (7th Cir.1982)).

5. In *State v. Sheppard*, 679 So.2d 899, 899–900 (La.1996), the Louisiana Supreme Court held that a defendant whose counsel first spoke with him on the morning of trial and subsequently withdrew, only to be replaced by an attorney who never discussed with the defendant his decision to plead guilty, was entitled to the presumption of prejudice because he did not have an opportunity to discuss with an attorney the decision to plead guilty. In *State v. Holland*, 921 P.2d 430, 436 (Utah 1996), the Utah Supreme Court held that a defendant who pleaded guilty and was sentenced to death was entitled to the presumption of prejudice because of his attorney's actual conflict of interest, when the attorney had the defendant testify at another client's trial to show that he, and not the second client, was a "prime candidate for the death penalty." In *Stano v. Dugger*, 889 F.2d 962, 968 (11th Cir.1989), aff'd on reh'g, 921 F.2d 1125 (1991), cert. denied, 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85, the court held that the defendant was entitled to a presumption of prejudice when during the guilty plea proceeding his counsel told the court that he had not received full discovery from the state and thus could not advise his client as to the propriety of his guilty plea.

that presumption.[6] Although we acknowledge the possibility that the performance of counsel attendant to the entry of a guilty plea may be so deficient that the presumption of prejudice is warranted, we conclude that the facts of this case do not demonstrate such unreliability in the entry of Laferriere's plea of guilty that the presumption of prejudice is warranted here.

[¶ 14] Laferriere alleges that it was error for his attorney to advise police of Laferriere's phone call notifying him of the shooting. However, Laferriere's call to Norman Burby led Burby to call police at the same time as Laferriere's attorney, thus ensuring police involvement in the immediate investigation of the shooting. Although Laferriere complains that his attorney did not limit the ability of the police to speak with him, Laferriere used those conversations to claim that the shooting was an accident, the only exculpatory account he could offer under the circumstances.[7]

 [¶ 15] Laferriere claims that he was prejudiced by his attorney's error in advising him that he would be able to serve his sentence in a nursing home rather than prison, and by the joint recommendation of a 55 year sentence. Laferriere's expectation as to where he would serve his sentence is a collat-

eral consequence of his plea and does not render it involuntary. *Wellman v. State*, 588 A.2d 1178, 1180–81 (Me.1991). There is no evidence that Laferriere did not understand the length of the sentence he faced as a consequence of his plea, and his dissatisfaction with the sentence to which he agreed does not render his decision to agree involuntary.[8] Indeed, as we have noted, the record reflects the care taken by the court in conducting Laferriere's plea hearing to ensure that Laferriere understood the consequences of his plea. *State v. Gilcott*, 420 A.2d 1238, 1239 (Me.1980).

[¶ 16] Laferriere also alleges that his attorney failed to explain the nature of the charges against him and that he did not understand the crime to which he was pleading guilty. Again, the transcript of the plea proceeding reveals the care the court took to explain the exact nature of the charge against Laferriere and to ensure that he was knowingly pleading guilty to that charge.[9] There is nothing in the record to support Laferriere's contention that he did not understand the crime with which he was charged.

 [¶ 17] Finally, Laferriere contends that his attorney had a conflict of interest in his representation because of the potential that he could have been called as a witness for the State had the matter proceeded to

---

6. *See Woodard v. Collins*, 898 F.2d 1027, 1028 (5th Cir.1990) (defendant was not "constructively denied" counsel when counsel failed to investigate one count of the multi-count indictment to which defendant pleaded guilty); *Mosier v. Murphy*, 790 F.2d 62, 65–6 (10th Cir.1986), *cert. denied*, 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (defendant not entitled to presumption of prejudice because he failed to prove his counsel had an actual conflict of interest); *Praylow v. Martin*, 761 F.2d 179, 182 (4th Cir.1985), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 466 (late appointment of counsel for guilty plea does not give rise to presumption of prejudice).

7. Laferrier told state police investigators that he was attempting to commit suicide by shooting himself in the head when his wife grabbed his arm and the gun accidentally discharged three times.

8. *See Gargano v. U.S.*, 852 F.2d 886, 891 (7th Cir.1988) ("The petitioner has made no showing that there is any probability, much less a reasonable one, that the result of any further proceed-

ing would be different. He does not suggest that he is not guilty. He only suggests that he should have had the opportunity to strike a harder bargain with the government. This is not enough to establish prejudice."); *In re Fisher*, 156 Vt. 448, 594 A.2d 889, 896 (1991).

9. THE COURT: Mr. Laferriere, you've heard your attorney recite a number of facts. One of the issues is whether you understand the nature of the charges against you. As I mentioned, you were charged with either intentionally causing the death of Audrey Laferriere or knowingly causing her death. And I've defined intentionally for you, meaning that it was your conscious object to cause her death. Knowingly is defined as a person acts knowingly with respect to a result of their conduct when they are aware, in other words, you were aware that it was practically certain that your conduct would cause her death. That's what you're charged with. Do you understand that? THE DEFENDANT: Yes, I do.

trial. "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1719. The State brought the issue of Laferriere's attorney's involvement in the case to the court's attention and represented to the court that the State would neither call the attorney as a witness nor use at trial any information garnered by means potentially violative of attorney-client confidences. Given these representations, Laferriere's attorney did not have a conflict of interest.

[¶ 18] In summary, there is nothing in Laferriere's claims of ineffectiveness of counsel that so erodes our confidence in the reliability of the plea proceeding as the forum for the entry of a knowing and voluntary plea by a guilty person that we must presume prejudice to assure the Sixth Amendment's guarantee of a right to counsel.

### Ineffectiveness

[¶ 19] Because we have determined that Laferriere failed to satisfy the prejudice prong of the *Hill* test and that he is not entitled to a presumption of prejudice, we need not decide if Laferriere has satisfied the first prong of the *Strickland* test.

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

The entry is:

Judgment affirmed.

