STATE OF MAINE
PENOBSCOT, ss

FILED & ENTERED
SUPERIOR COURT
JUN 09 2004
PENOBSCOT COUNTY

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-02-261
AM -PEN- 6/9/2004

SCOTT N. SAYCE,

　　　　Petitioner

v.

STATE OF MAINE,

　　　　Respondent

ORDER ON PETITION FOR POST
CONVICTION REVIEW and DEFENDANT'S
MOTION TO REDUCE SENTENCE

DONALD
L.

JUN 30 2004

　　Petitioner Scott Sayce argues that he received ineffective assistance of counsel because his attorney did not adequately explain the plea agreement, did not take his medical condition into consideration, failed to conduct any independent investigation prior to trial, and made little effort to discuss the case with him. He also argues that his plea was not entered knowingly and voluntarily. For the following reasons, the petition is GRANTED.

　　On 10/20/00, a motion to revoke the petitioner's probation was filed in York County. See State's Ex. 3. On 11/14/00, the petitioner was indicted in Oxford County for class C Habitual Offender, class C Operating Under the Influence, and class E Refusing to Give Personal Information to an Officer. See State's Ex. 2. On 2/5/01, the petitioner was indicted in Penobscot County for class C Habitual Offender and class C Operating Under the Influence. The criminal conduct in Penobscot County preceded that in Oxford County. See Pen-CR-01-61. Throughout his incarceration during the time these charges were pending against him, the petitioner was taking several

medicines, which he alleged affected his attentiveness and thoroughness and made him tired. See Def.'s Ex. 1 (dated 9/17/00 & 1/1/01).

## OXFORD COUNTY AND YORK COUNTY CHARGES

Attorney John Jenness represented the petitioner on the Oxford County charges. Attorney Jenness performed substantial work for the petitioner, saw him frequently at the jail, and wrote to him. See State's Ex. 5. Attorney Jenness did not observe any indication that the petitioner suffered from any mental disease or defect, nor did he observe that the petitioner was under the influence of medicine.

The petitioner requested that Attorney Jenness look into all of the pending matters. In addition to handling the Oxford County charges, Attorney Jenness obtained the Penobscot County discovery materials and contacted the Penobscot County District Attorney's Office. Attorney Jenness does not have any record to show that he gave the Penobscot County discovery materials to the petitioner. Although Attorney Jenness's letter to the Assistant District Attorney in Oxford County was copied to the defendant, the letter does not show that Mr. Sayce received the enclosures sent to Oxford County Assistant District Attorney O'Conner. See State's Ex. 4.

In spite of the petitioner's hopes and Attorney Jenness's efforts, he was unable to arrange a plea agreement on the Penobscot County charges that would have provided a sentence to be served concurrently with the sentences on the Oxford County charges and the York County probation motion. The petitioner would not agree to a sentence on the Penobscot charges that would be served consecutively to the sentences in Oxford and York Counties. The petitioner told Attorney Jenness to "let it go" and the petitioner would deal with the issue when he was taken to Penobscot County.

The petitioner told Attorney Jenness that further probation and fines were not acceptable. Attorney Jenness negotiated a sentence of five years, which covered all

pending charges in Oxford County and the probation motion in York County. This agreement did not include the Penobscot County charges. On 1/24/01, the petitioner pleaded guilty to the Oxford County charges and admitted the probation violations in the York County case. He received five years on the Oxford County charges and a partial revocation of six months on the York County motion; the sentences were to be served concurrently. His probation was terminated.

PENOBSCOT COUNTY CHARGES

Attorney Julio Desanctis practiced law in Bangor from 1974 to 2002. A little more that half of his practice was criminal defense. He was appointed to represent the petitioner in Penobscot County in February 2001. The case was scheduled for jury selection on 4/9/01, and the petitioner pleaded guilty on that date.

The petitioner was in custody and was transported to the Penobscot County jail one day before his arraignment on the Penobscot County indictment. It is undisputed that the petitioner met with Attorney Desanctis twice, once on the morning of the arraignment and once on the morning of jury selection. No record of the time spent on this case by Attorney Desanctis is available because he did not file a voucher.

There was no contact between those two meetings. The petitioner also spent an additional two weeks in the Penobscot County Jail and Attorney Desanctis did not visit during that stay. Attorney Desanctis agreed that he made no trips to the prison to see the petitioner, did not ask to have the petitioner brought to the Penobscot County Jail, and did not see the petitioner in the jail before the arraignment or the plea.

The petitioner met very briefly with Attorney Desanctis before the arraignment. Contrary to the petitioner's testimony, Attorney Desanctis stated that he reviewed the police reports with the petitioner. Attorney Desanctis agreed, however, they did not spend a long time discussing the case because it was a "fairly brief fact pattern."

Attorney Desanctis had the prosecutor's file and determined that the case was "pretty much standard." Attorney Desanctis stated that he did not give the petitioner the discovery materials at arraignment because he had only the prosecutor's file. The court concludes that any discussion that occurred prior to arraignment was hurried, brief, and not informative.

The petitioner alleges that he told Attorney Desanctis that the petitioner's wife was driving at the time of the alleged offenses. He states that he told Attorney Desanctis that his wife would have testified if she had been asked, although she did not have a driver's license. According to Mr. Desanctis, the petitioner admitted operating the car. Attorney Desanctis testified that he asked the petitioner if he was prepared to testify truthfully under oath that he was not operating the car and the petitioner's response was, "No." Attorney Desanctis stated that the petitioner did not say he was not operating the car and Attorney Desanctis did not recall any discussion about the defendant's wife.

After the arraignment, the petitioner wrote to Attorney Desanctis but could not get in touch with him. The petitioner gave Attorney Desanctis written information at the time of the arraignment or later by mail. On the day of the plea, Attorney Desanctis returned the petitioner's materials and gave the petitioner the Penobscot County discovery materials.

Attorney Desanctis agreed that he did not do "a whole lot of investigation of the case" but concluded that the petitioner was "pretty clearly guilty." Attorney Desanctis filed a motion to suppress, which was his standard practice; the motion was not pursued. He observed the scene of the crime only because he routinely traveled by the location; he did not go to the scene specifically for this case.

4

Mr. Desanctis agreed that after he looked at the file, he decided that the State had the defendant "dead to rights." Although Attorney Desanctis never spoke to the store clerk who identified the petitioner as the driver and never hired a private investigator to speak to the clerk, Attorney Desanctis determined that the clerk would have credibility with a jury because the clerk was a disinterested citizen. Any plan Attorney Desanctis may have had to investigate the case ended when the petitioner admitted driving. Attorney Desanctis found out from the Assistant District Attorney that the clerk was available to testify. See State's Ex. 6. Attorney Desanctis decided to work out a plea agreement because he believed that the petitioner would be found guilty, based on the clerk's testimony.

Attorney Desanctis agreed that he did not have contact with the petitioner again after arraignment until the day of the plea. Attorney Desanctis could not remember whether he was also representing other clients on the two occasions he met with the petitioner at the courthouse. The court accepts the petitioner's testimony that Attorney Desanctis was representing five or six incarcerated defendants on the date of the petitioner's plea. Attorney Desanctis met briefly with the petitioner on that day and advised him of the State's position. The petitioner had no time to read any materials. They discussed the petitioner's options: a plea to a sentence of three years to be served consecutively to the Oxford County charges; an open plea, which Attorney Desanctis believed could result in a consecutive sentence of more than three years; or a trial, which Attorney Desanctis believed would result in a guilty verdict because the petitioner had admitted he was driving.

The petitioner felt totally unprepared for his case and to pick a jury, but Mr. Desanctis told the petitioner he had to make a decision immediately regarding pleading or picking a jury. The petitioner was not worried about adding convictions to his

5

record, but he was worried about serving more time in addition to the Oxford County sentence.

The petitioner alleged that he was not paying attention during the Rule 11 proceeding and did not understand he was getting three years in addition to what he was already serving. He testified that he could hardly remember being in the courtroom. He further testified that because of his medicine, he was always "kind of high" and slept all the time, which was "nice" during incarceration. During the Rule 11 proceeding, the petitioner mentioned 2008 during a discussion of when his fines would be paid. See State's Ex. 1 at 13-14.

Pursuant to the plea agreement, the petitioner received a sentence on the Penobscot County Habitual Offender charge of three years to be served consecutively to the sentence in Oxford County. The Assistant District Attorney agreed to reduce the Operating Under the Influence charge from a class C to a class D in order to reduce the amount of the required fines.

The petitioner read the police report on the Penobscot County charges for the first time when he returned to prison after his plea and realized that they were incorrect. There is a discrepancy between the presentation of facts at the Rule 11 proceeding and in the police report. See State's Ex. 1, p. 8; Def.'s Ex. 2. Nothing in the police report provides that "the defendant was sitting in his vehicle when the police arrived . . ." State's Ex. 1, p. 8. The store clerk did not specifically state the petitioner's location when the police arrived. The police officer stated that the petitioner was coming out of the store when the police arrived. See Def.'s Ex. 2. The report makes it clear that no police officer observed the petitioner driving. Attorney Desanctis agreed that the issue in the case was operation. Crucial to the State's case was the store clerk's

6

testimony that the defendant was operating. The petitioner testified that he would not have pleaded if he had read the police reports prior to the plea.

The petitioner agreed that he knows the difference between consecutive and concurrent sentences but alleges that he did not know that the Penobscot County sentence was consecutive to his previous sentences until approximately a year after he had been in prison. He thought he would be released in 2005. During a review at the prison, the petitioner was told that the three-year Penobscot County sentence would be served after Oxford County sentence and he would be released in 2008. The petitioner then filed his petition for post-conviction review.

DISCUSSION

### Medical Condition/Plea Agreement

Based particularly on the testimony of Attorney Jenness and on the transcript of the Rule 11 proceeding, the court concludes that the petitioner's understanding of events was not impaired by his medications. Based on the transcript of the Rule 11 proceeding, the court concludes that the petitioner understood that the Penobscot County sentence would be served consecutively to the Oxford County sentence. See e.g., State's Ex. 1, pp. 13-14.

### Failure to Investigate/Communicate

In order to vacate a conviction based on a guilty plea, the court must find that "(1) the performance of [the] attorney fell below that of an ordinary fallible attorney; and (2) there is a reasonable probability that, but for [the] attorney's error, [the defendant] would not have entered a guilty plea and would have insisted on going to trial." Aldus v. State, 2000 ME 47, ¶ 13, 748 A.2d 463, 468. "Whether the performance of an attorney falls below the standard is a question of fact." Aldus, 2000 ME 47, ¶ 14, 748 A.2d at 468.

7

The court concludes that the performance of defense counsel in this case fell below the standard of an ordinary fallible attorney. The petitioner received virtually no assistance from counsel. Defense counsel spoke briefly to his client on only two occasions, when the petitioner was in custody and in the holding cell at the Penobscot County Courthouse. The petitioner received written discovery materials on the day of his plea and did not have time to read the materials until his return to prison after the plea was entered. The petitioner was given very little time to decide whether to plead or pick a jury and had no information on which to make that decision. The petitioner had no basis on which to dispute the allegations during the Rule 11 proceeding. See State's Ex. 1, p.10.

Defense counsel did not investigate this case. In particular, no interview, criminal record check, or investigation of the store clerk, whose testimony would have been pivotal at trial, was performed. Instead, the determination was made that the clerk would be a credible witness, that the case was "pretty much standard," and that the petitioner was "pretty much guilty." Although defense counsel stated that he did not investigate because the petitioner admitted he was driving, the inquiry should not have ended there. The State has the burden of proof.

The court further concludes that there is a reasonable probability that the petitioner would not have pleaded guilty and would have gone to trial if he had received and read the discovery materials prior to the plea and if he had had the time and opportunity to discuss the case, including the proposed sentence, with counsel prior to the plea. See Hill v. Lockhart, 474 U.S. 52, 59-60 (1985). This was not the "knowing and voluntary choice of a guilty person." LaFerriere v. State, 1997 ME 169, ¶ 8, 697 A.2d 1301, 1305; see also Aldus, 2000 ME 47, ¶ 15, 748 A.2d at 468 (voluntariness of plea hinges upon whether counsel's advice is that of ordinary competent counsel).

The entry is

The Petition for Post-Conviction Review is GRANTED.

The Petitioner's Motion to Reduce Sentence is DENIED.

Date: June 6, 2004

Nancy Mills
Chief Justice, Superior Court

PEN-CR-02-261

ATTORNEYS


WILLIAM MASELLI ESQ    For Petitioner
98 COURT STREET
AUBURN  ME   04210



GRGEGORY CAMPBELL ASSISTANT DISTRICT ATTORNEY
OFFICE OF THE DISTRICT ATTORNEY
97 HAMMOND STREET
BANGOR ME   04401