STATE OF MAINE                         SUPERIOR COURT
KENNEBEC, ss                           CRIMINAL ACTION
                                       DOCKET NO.  CR-10-80
                                       ハM- KEN-2/11/2011


BRANDON LUCARELLI,

            Petitioner
      v.                               ORDER ON PETITION
                                       FOR POST-CONVICTION
STATE OF MAINE                         REVIEW


On 10/5/07, the petitioner pleaded guilty to robbery (17-A M.R.S. §§ 651(1)(E),

1252(5)), which carried a minimum mandatory sentence of four years. He received a

sentence of fifteen years, all but six years suspended, and four years of probation. The

petitioner now alleges he received ineffective assistance of counsel because counsel (1)

did not file a motion to suppress the petitioner's confession; (2) failed to pursue the

petitioner's best interest by failing to negotiate with the prosecutor and advising the

petitioner to plead guilty in spite of weak evidence against him.  For the following

reasons, the petition is denied.

FINDINGS OF FACT

Augusta Police Detective Vincent Morris was assigned to investigate a robbery

that took place at Cumberland Farms in Augusta on 2/10/07.  On 2/27/07, Detective

Morris spoke to the petitioner's friend, Corey Hanson, who stated that the petitioner

had admitted he robbed a convenience store.  (State's Ex. 6.)  Detective Morris also

spoke to Lauri Labbe, the mother of the petitioner's children.  She was afraid because of

the violence involved in the robbery.  She stated that when the petitioner was at her

1

home on 2/9/07, she asked for money for the children. He had no money and no source of income. When he visited again on 2/11/07, he had purchased toys for the children and took them to McDonald's.

Detective Morris spoke to the defendant on the telephone and arranged a meeting at the petitioner's mother's home in No. Waterboro. On 2/28/07, Detective Morris and Augusta Police Department Detective Jason Cote were escorted to the No. Waterboro residence by a York County deputy sheriff, who waited down the road while the detectives spoke to the petitioner. Eventually Detective Cote told the deputy to leave because they did not want to take any more of his time. The detectives introduced themselves to the petitioner, who agreed to speak outside, away from the house so his mother could not hear the conversation. Detective Morris then advised the petitioner he was not under arrest and would not be arrested; the detectives did not have authority to arrest the petitioner in York County. Detective Morris stated that the interview was voluntary on the petitioner's part. Detective Morris then stated that he had information that the petitioner was involved in the robbery at Cumberland Farms.

The petitioner stated that he had been drinking heavily at the home of friends, Corey Hanson and his girlfriend, in Augusta. When they began to argue, the petitioner decided to leave. He drove to Water Street and parked behind one of the buildings. He decided to rob the Cumberland Farms. He admitted to committing the robbery, wearing a knit cap and bandana over his face and armed with his mother's pistol. He discarded the bandana and cap. He gave his jacket, which was similar to one seen in the video of the robbery, to Detective Morris.

The clerk at the Cumberland Farms, Ernest Lake, was terrified during the robbery, especially because a gun was pointed at his head. (Tr. of 10/5/07 at 3-4.)

2

When told to lie down, the clerk stated that he was handicapped and could not lie down. He was told to go to the back of the store and face the wall.

Detective Morris suggested that the petitioner speak to his mother because her gun had been used in a crime. He told his mother the same story he told the detectives. She was visibly upset. She showed the gun to the detectives and agreed they could take it as evidence.

Detective Morris could not recall if the petitioner's mother asked what would happen to him. He did not give an opinion and said he could not make any promises and that it was not for him to decide.

The petitioner wrote a statement at the kitchen table. (State's Ex. 7.) Detective Morris asked if the petitioner would turn himself in the next day at the Augusta Police station and he agreed. Detective Morris would have sought an arrest warrant if the petitioner failed to appear at the station.

The petitioner arrived at the station the next day. Nothing of substance was discussed in the lobby or the interview room before the recording equipment was activated. (Pet.'s Ex. 4.) A DNA cheek swab was taken with the consent of the petitioner. Detective Morris read the Miranda warnings to the petitioner. He understood his rights, agreed to speak to Detective Morris, and signed the waiver. Detective Morris and the petitioner discussed his difficult financial circumstances, the events leading to the robbery, the robbery, and the events after the robbery. Detective Morris asked if the petitioner had been involved in any other crimes and he denied any involvement. Detective Morris told the petitioner he would be summonsed for robbery, terrorizing, and theft. Detective Morris then mentioned that he and the petitioner had talked about talking to the DA and that would all come into play.

After the interview, a bail commissioner set bail at $1,000.00 unsecured. Detective Morris told the petitioner he could not make promises. Detective Morris could not remember if he had spoken to anyone at the District Attorney's office. Both Detective Morris and Detective Cote agreed that they did not tell the petitioner they had spoken to the District Attorney or any Assistant District Attorneys. Neither told the petitioner what his likely sentence would be. The petitioner was told that Detective Morris was willing to accompany the petitioner to speak to the District Attorney's people if the petitioner set up an appointment and Detective Morris would indicate the petitioner's level of cooperation. Detective Morris may have said that people who cooperate fare better than those who do not. There is no reference to any agreement with the prosecutors in Detective Morris's reports. (State's Ex. 8.)

The petitioner and his mother, Karen Lucarelli, have a very different recollection of the events of 2/28/07. They both testified that the detectives received phone calls while at Ms. Lucarelli's residence. Both testified that the detectives stated that they had been in contact with the District Attorney's office and because the petitioner was cooperative, the office would be willing to work with him. Ms. Lucarelli testified that Detective Morris told her the petitioner would receive a sentence of three years to be served initially. The petitioner testified that Detective Morris told the petitioner he would receive a sentence of two years to be served initially.

The petitioner's trial counsel learned that he had been appointed to represent the petitioner when he received notice of the docket call in 7/07. Counsel filed a motion to continue. (State's Ex. 1.) Docket call was not continued but the court stated that the case would be tried in September. The petitioner was not in custody.

Counsel reviewed discovery and requested copies of two videos, including one of the interview of the petitioner by the Augusta Police Department. (State's Exs. 2-5;

4

Pet.'s Ex. 4.) Counsel believed he told the petitioner he could watch the video at counsel's office; there was no opportunity to watch the video at the courthouse. Counsel spoke to the petitioner two or three times to discuss whether the discovery was accurate and how they would proceed with the case.

Counsel and the petitioner discussed both conversations with the detectives. Counsel and the petitioner discussed whether the police reports were accurate and whether during the first interview the petitioner thought he was free to leave and was told he would not be arrested. With regard to the second interview, they discussed whether the petitioner's statements were voluntary.

At the 8/07 docket call, counsel received the State's first plea offer of fifteen years, all but eight years suspended and probation. Counsel discussed the offer with the petitioner, who stated he was willing to accept an offer that involved two years in jail. Counsel discussed the minimum, mandatory sentence involved with the charge as alleged and that the offense would have to be amended to permit a two-year sentence. The petitioner then asked counsel to withdraw. The petitioner questioned counsel's age and whether he could handle the case. A motion to withdraw was filed and denied. (9/5/07 Tr. at 15-16.)

Counsel continued to negotiate with the State and at jury selection received the State's second offer of fifteen years, all but six years suspended. (State's Ex. 9.) Counsel had a clear impression that the second offer was a "take it or leave it" offer of fifteen years, all but six years suspended or an open plea and that the prosecutor was getting "extremely annoyed" at counsel. Counsel further concluded that if he pressed the subject, the plea offer would be "off the table."

Assistant District Attorney Paul Rucha, who handled the case, agreed that the petitioner's counsel asked repeatedly for a more favorable plea offer for the petitioner.

5

A.D.A. Rucha believed the State had favorable evidence and the case would not be hard to try. He told counsel that the petitioner had to make a decision.

Counsel advised the petitioner that the second offer was the best that would be received. Counsel believed the offer was reasonable based on sentences for similar offenses. Counsel recommended the plea offer because he believed the court would not impose a sentence of fewer than six years to be served initially and the petitioner was looking at eight or ten years. Counsel told the petitioner he had to decide what he wanted to do.

Counsel had no recollection that the petitioner told counsel that the detectives told the petitioner that they had been in contact with the District Attorney's office, that an agreement had been reached, and that the petitioner would receive a two-year sentence. Counsel also denied that he told the petitioner that he would not negotiate further or file a motion to suppress because he did not want to alienate the District Attorney's office and jeopardize other cases.

During the Rule 11 proceeding and the sentencing hearing, neither the petitioner nor Ms. Lucarelli mentioned anything about another agreement or promises by the detectives. (Tr. of 9/5/07 & Tr. of 10/5/07.) During the Rule 11 proceeding, the petitioner stated that no one made any promises to him to encourage him to plead guilty. (Tr. of 9/5/07 at 8-9.) He stated he had had enough time to speak to his attorney about the agreed-upon sentence to be imposed. (Id. at 15.) The court addressed whether the petitioner was satisfied with the services of his attorney and the petitioner said that he was. The court then addressed that issue further because the motion to withdraw had been filed. The petitioner stated that "since that time when the motion was filed things have improved greatly between myself and [counsel]." (Id. at

6

15-16.) The petitioner testified at the hearing on the petition for post-conviction review that he said that because he did not have any choice.

During the Rule 11 proceeding and sentencing, Ms. Lucarelli discussed only whether her gun would be returned to her. (Id. at 18; Tr. of 10/5/07 at 8.)) When asked at the hearing on the petition for post-conviction review why she did not mention the alleged agreement, she testified that she did not know she could. During the Rule 11 proceeding, however, she asked whether she could address the court. (Tr. of 9/5/07 at 18.) She then discussed the return of her gun. (Id.)

Mr. Lake spoke at the petitioner's sentencing. The impact of the petitioner's action on Mr. Lake was significant. (Tr. of 10/5/07 at 3.) Mr. Lake did not agree with the proposed sentence and thought the petitioner should serve eight to ten years initially. (Id. at 3-4.)

During the Rule 11 proceeding, the court asked the petitioner, "Are you pleading guilty because you are guilty and for no other reason?" The petitioner responded, "Yes, ma'am." (Tr. of 9/5/07 at 15.) The court specifically found, among other things, that the petitioner's plea was voluntary, that he understood the consequences of his plea, including the agreed-upon sentence, and that there was a factual basis for acceptance of the plea based on the prosecutor's statement of the evidence. (Id. at 17.)

CONCLUSIONS

The petitioner must show that "(1) the performance of [his] attorney fell below that of an ordinary fallible attorney; and (2) there is a reasonable probability that, but for [his] attorney's error, [the defendant] would not have entered a guilty plea and would have insisted on going to trial." Aldus v. State, 2000 ME 47, ¶ 13, 748 A.2d 463, 468.

7

"[T]he test is applied on a case-by-case basis, and evaluations of ineffective assistance of counsel claims are 'guided by the overall justness and fairness of the proceeding.'" McGowan v. State, 2006 ME 16, ¶ 12, 894 A.2d 493, 497 (quoting Aldus, 2000 ME 47, ¶¶ 14-15, 748 A.2d at 468). "'[R]easonable probability' is 'a probability sufficient to undermine confidence in the outcome.'" Laferriere v State, 1997 ME 169, ¶ 8, 697 A.2d 1301, 1305 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).

A petitioner faces a difficult task to show that a plea of guilty was not the voluntary and knowing choice of a guilty person if the court asks appropriate questions and if the petitioner admits that he committed the act with which he is charged. Laferriere, 1997 ME 169, ¶ 9, 696 A.2d at 1305. The petitioner has failed to make the required showing. There is nothing in this record to show that the petitioner would have insisted on going to trial. Instead, he argues first that counsel should have filed a motion to suppress. The time for the petitioner and Ms. Lucarelli to discuss any promises made by the detectives was, at the latest, during the Rule 11 proceeding, when specific inquiry was made regarding any promises made and satisfaction with his counsel. They did not do so. Based on counsel's discussions with the petitioner, the police reports, and the video of the 3/1/07 interview at the Augusta Police Department, counsel had no basis on which to file a motion to suppress.

The petitioner next argues that counsel failed to protect the petitioner's best interests. Counsel negotiated on several occasions with the prosecutor until he made clear that the plea offer would not be reduced. At that point, counsel was concerned that the second plea offer would be withdrawn by the State. Counsel also was concerned, appropriately, that a higher sentence would be imposed after an open plea

8

or after trial. The State's evidence against the petitioner was strong and the impact of the crime on Mr. Lake was significant. Counsel effectively assisted the petitioner.[1]

The entry is

The Petition for Post-Conviction Review is DENIED.

Date: February 11, 2011

Nancy Mills
Justice, Superior Court

---

[1]    Because the petitioner has not shown prejudice, the court could dispense with a discussion of the performance prong of the test. See Laferriere, 1997 ME 169, ¶ 19, 697 A.2d at 1309.

BRANDON LUCARELLI
  vs
STATE OF MAINE

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CR-2010-00080

## DOCKET RECORD

PL. ATTY: ROBERT RUFFNER
          ROBERT J RUFFNER ATTORNY AT LAW
          80 EXCHANGE ST., SUITE 32
          PORTLAND ME 04101
          APPOINTED 03/30/2010

State's Attorney: EVERT FOWLE

Filing Document: PETITION
Filing Date: 02/01/2010

Major Case Type: POST CONVICTION REVIEW

## Charge(s)

## Docket Events:

02/01/2010 FILING DOCUMENT -  PETITION FILED ON 02/01/2010

02/01/2010 POST CONVIC. REVIEW -  REVIEW SENT FOR REVIEW ON 02/01/2010

03/15/2010 POST CONVIC. REVIEW -  ASSIGNMENT ASSIGNED TO DOCKET ON 03/09/2010
           WILLIAM R ANDERSON , JUSTICE
03/30/2010 POST CONVIC. REVIEW -  ASSIGNMENT ASSIGNED TO JUSTICE ON 03/26/2010
           NANCY  MILLS , JUSTICE
03/30/2010 MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 03/30/2010

03/31/2010 MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 03/30/2010
           NANCY  MILLS , JUSTICE
           COPY TO PARTIES/COUNSEL
03/31/2010 Party(s):  BRANDON LUCARELLI
           ATTORNEY -  APPOINTED ORDERED ON 03/30/2010

           Attorney:  ROBERT RUFFNER
05/07/2010 ORDER -  TRANSCRIPT ORDER FILED ON 05/07/2010
           JOHN  NIVISON , JUSTICE
           TRANSCRIPT TO BE PAID FOR AT STATE EXPENSE, COPY SENT TO TAMMY DROUIN AND MAUREEN
           WHITEHOUSE
05/14/2010 SUPPLEMENTAL FILING -  AMENDED PETITION FILED ON 05/13/2010

05/18/2010 ORDER -  TRANSCRIPT ORDER FILED ON 05/18/2010

           Attorney:  PAUL RUCHA
           REQUEST FOR TRANSCRIPT OF RULE 11 AND SENTENCING, COPY SENT TO TAMMY DROUIN AND MAUREEN
           BRADFORD.
06/03/2010 POST CONVIC. REVIEW -  RESPONSE TO PETITION FILED ON 06/01/2010

06/03/2010 OTHER FILING -  TRANSCRIPT FILED ON 06/03/2010

           TRANSCRIPT OF SENTENCING FILED BY MAUREEN WHITEHOUSE
06/08/2010 OTHER FILING -  TRANSCRIPT FILED ON 06/08/2010

           TRANSCRIPT OF RULE 11 FROM TAMMY DROUIN

10/22/2010 POST CONVIC. REVIEW -  PCR CONFERENCE SCHEDULED FOR 11/15/2010 @ 3:30
            NANCY  MILLS , JUSTICE
10/22/2010 POST CONVIC. REVIEW -  PCR CONFERENCE NOTICE SENT ON 10/22/2010


11/17/2010 POST CONVIC. REVIEW -  PCR CONFERENCE HELD ON 11/15/2010
            NANCY  MILLS , JUSTICE
            Attorney:  JAMES MITCHELL
            DA:  ROBERT RUFFNER
            EVIDENTIARY HEARING TO BE SCHEDULED, 2-3 HOURS.
11/23/2010 HEARING -  EVIDENTIARY HEARING SCHEDULED FOR 12/06/2010 @ 1:30
            NANCY  MILLS , JUSTICE
            NOTICE TO PARTIES/COUNSEL
11/23/2010 HEARING -  EVIDENTIARY HEARING NOTICE SENT ON 11/23/2010


11/23/2010 WRIT -  HABEAS CORPUS TO PROSECUTE ISSUED ON 11/23/2010


            CERTIFIED COPY TO SHERIFF DEPT.
12/01/2010 OTHER FILING -  WITNESS LIST FILED BY DEFENDANT ON 12/01/2010


            Attorney:  ROBERT RUFFNER
            AMENDED WITNESS LIST
12/14/2010 HEARING -  EVIDENTIARY HEARING HELD ON 12/06/2010
            NANCY  MILLS , JUSTICE
            Attorney:  JAMES MITCHELL
            DA:  ROBERT RUFFNER          Reporter:  TAMMY DROUIN
            TO BE CONTINUED
12/14/2010 HEARING -  EVIDENTIARY HEARING SCHEDULED FOR 12/21/2010 @ 8:00


            NOTICE TO PARTIES/COUNSEL
12/14/2010 WRIT -  HABEAS CORPUS TO TESTIFY ORDERED ON 12/14/2010


12/14/2010 WRIT -  HABEAS CORPUS TO TESTIFY ISSUED ON 12/14/2010


            CERTIFIED COPY TO SHERIFF DEPT.
12/14/2010 HEARING -  EVIDENTIARY HEARING NOTICE SENT ON 12/14/2010


02/15/2011 HEARING -  EVIDENTIARY HEARING HELD ON 12/21/2010
            NANCY  MILLS , JUSTICE
            Attorney:  ROBERT RUFFNER
            DA:  PAUL RUCHA
            Defendant Present in Court
02/15/2011 POST CONVIC. REVIEW -  PCR DETERMINATION UNDER ADVISEMENT ON 12/21/2010
            NANCY  MILLS , JUSTICE
02/15/2011 FINDING -  DENIED ENTERED BY COURT ON 02/11/2011
            NANCY  MILLS , JUSTICE

A TRUE COPY
ATTEST: _____
                    Clerk